STATE use of WILSON, *et ux. vs.* JAMESON.—*December,* 1831.

In an action by S, a distributee of W, against L, his administrator, upon the administration bond, to recover a distributive share of W's estate, it appeared, that W, on the 22d October, 1810, conveyed sundry tracts of land and negroes to F, in consideration of $1000, paid by F; and that F, by a deed dated a few days after, and reciting the previous deed, and declaring that it was in trust, conveyed the same property to R, in trust for W for life, then in trust for the wife of W, if she should survive him, for life, or during her widowhood, then in trust for E, A, M, S, and T, daughters of W, as to one moiety of the land for life, and as to the other moiety for B, son of W, and upon the death or marriage of the daughters, then to B, in fee. The negroes were also distributed among the same parties. L, the administrator, was another son. The trust estate was not brought into *hotch-pot.* HELD, that these deeds were to be considered as one instrument, and afford ample proof, that S was advanced by the intestate in his life-time. No valuable consideration moved from S, and as respects her, the deeds were voluntary and gratuitous; but that this was no bar at law, to this action.

It is not every child that is advanced, the law excludes from distribution. It is only such as are advanced by a portion, equal or superior to a share. To make a full defence *at law,* under the act of 1798, *ch.* 101, *sub-ch.* 11, *sec.* 6, the defendant must show to the jury, the value of the plaintiff's advanced portion, and that it was equal to his distributive share.

APPEAL from *Charles* County Court.

The present was an action of *Debt,* instituted on the 5th August, 1825, in the name of the *State of Maryland,* at the instance, and for the use of *William M. B. Wilson,* and

*Sarah Q.* his wife, against the appellee, *Luke F. Jameson,* on his bond, as administrator of *Walter Jameson,* deceased, to recover the distributive share, of the said *Sarah Q.* as one of the children and representatives of the said *Walter,* of whom there were nine.

1. At the trial it was admitted that the plaintiff, *Sarah Q.* and the defendant, are each representatives of the deceased *Walter Jameson.* The plaintiff then read in evidence, the inventory of said deceased's estate, returned by the defendant to the Orphans Court, on the 14th December, 1814, amounting to the sum of $3524 89. Whereupon the defendant offered in evidence to the jury, a deed from *Walter Jameson,* the deceased, to one *John E. Ford,* bearing date on the 22d October, 1810, and recorded on the 31st October, of the same year; by which, for and in consideration of the sum of $1000, to him in hand paid by the said *Ford,* the said *Jameson* conveyed to the said *Ford,* his heirs, and assigns, sundry tracts of land, and negro slaves. And also read to the jury, the following deed from the said *Ford,* to one *Raphael Jameson,* bearing date 31st October, 1810. *viz.* "Whereas *Walter Jameson,* by deed bearing date on or about the 22d day of this month, did convey and transfer unto the said *John E. Ford,* all the real and personal property hereinafter designated, as by referring thereto will more fully and at large appear; *In trust* that the said *John E. Ford* should assure and convey the said real and personal property in the manner hereinafter expressed. Now this indenture witnesseth, that the said *John E. Ford,* in compliance with the confidence placed in him, by the said *Walter Jameson,* and for the consideration of the sum of $1000, to him in hand paid by the said *Raphael,* hath granted, bargained, and sold, and by these presents, he the said *John E. Ford* doth grant, bargain, and sell, unto the said *Raphael Jameson,* his heirs and assigns, all the following tracts, and negroes, (being the same lands and negroes contained in the before mentioned deed from *Walter Jameson* to the said *Ford.*) To have and to hold the same unto him the said

*Raphael,* his heirs and assigns, *upon trust,* nevertheless, and for the following uses and benefits; that is to say, upon trust, that the said *Raphael Jameson* and his heirs, shall permit, and suffer the said *Walter Jameson,* to have the use, profits and emblements, of all the said real and personal estate, for and during the term of his natural life, without impeachment of, or for any manner of waste, and without any liability to, or for any debts contracted, or to be contracted, by the said *Walter Jameson,* after the day and year aforesaid; and from and after the death of the said *Walter Jameson,* in case *Teresa Jameson,* wife of the said *Walter Jameson,* survives him, then *in trust,* that the said *Raphael Jameson,* and his heirs, shall permit and suffer the said *Teresa Jameson* to have and receive the profits, &c. of the said real and personal estate, (except such issue, as may be born of the female slaves,) for and during the the term of her single life or widowhood, in bar of her dower, or thirds in the real and personal estate of the said *Walter Jameson.* And from and after the death or marriage of the said *Teresa Jameson, in trust,* as to the real estate aforesaid, that the said *Raphael Jameson* and his heirs, shall permit *Elizabeth Jameson, Alice Jameson, Mariamne Jameson, Teresa Jameson,* and *Sarah Jameson,* (daughter of the said *Walter Jameson,*) or such of them as shall lead a virtuous, and chaste life, severally to have, and receive one moiety of the land, heretofore described as the land on which the said *Walter Jameson* now resides; and also one moiety of the lands called *McCatees,* as aforesaid, which said moiety shall include the dwelling house of the said *Jameson;* and to permit *Benjamin Jameson,* son to the said *Walter,* to have and receive the use, &c. of the other moieties of the lands last aforesaid; and from and after the marriage or death of the said daughters, then *in trust,* that the said *Raphael Jameson,* and his heirs, shall convey by a good and sufficient deed, all the lands last aforesaid, to the said *Benjamin Jameson,* his heirs and assigns forever. And as to the

personal estate, *in trust* that the said *Raphael Jameson*, his executors or administrators, shall deliver to the said *Benjamin Jameson* a certain negro boy, to another son, a second negro boy; and to a third son, a third negro boy. And to divide all the rest, and residue of the said negroes, with the increase, equally between the said daughters, *Elizabeth, Alice, Mariamne,* and *Sarah Jameson.*" It was admitted that the plaintiffs, *Wilson* and his *wife,* (who is the above named *Sarah,*) did not bring into *hotch-pot,* the property received by them, in virtue of the deed from *Ford* to *Jameson.* The defendants then prayed the court to instruct the jury, that under the evidence, the plaintiffs were not entitled to recover; which instruction the court gave. The plaintiffs excepted, and the verdict and judgment being for the defendant, they appealed to this court.

When the cause came on to be argued in the Court of Appeals, it was agreed so to amend the record, "that the court should review the opinion below, upon the point, whether the deeds and evidence in the bill of exceptions, constitute an advancement in law, so as to preclude a recovery by the plaintiffs of a distributive share of the estate of *Walter Jameson,* the father, without bringing the same into *hotch-pot.*"

The cause was argued before BUCHANAN, Ch. J., EARLE, ARCHER, and DORSEY, J.

*Brawner,* for the appellants, contended,

1. That the deeds from *Walter Jameson* to *John E. Ford,* and from *Ford* to *Raphael Jameson,* express to be executed for a valuable consideration, and there is no evidence of their being intended as an advancement. 2. That if they do operate as an advancement, the jury in forming their verdict, should have taken into consideration the value of such advancement, and the amount to be deducted. Upon the *first* point, he referred to *Edwards vs. Freeman,*

2 *P. Wms.* 436.   Upon the *second*, to *Stewart vs. The State*, 2 *Harr. and Gill*, 114.

*C. Dorsey* and *Stonestreet*, for the appellee.

A settlement on a child in the life-time of the father is an advancement, *Edwards vs. Freeman*, 2 *P. Wms.* 445. *Powis vs. Burdett*, 9 *Ves.* 435. *Burns' Ecl. Law*, 710. The second deed shows the object of the first, and the court was the proper tribunal to expound it. *Stewart vs. The State*, 2 *Harr. and Gill*, 114. The consideration of the deed from *Jameson* to *Ford*, appears to have passed from *Ford*, and was voluntary, and gratuitous therefore, so far as concerns the children.

*A. C. Magruder*, in reply.

The plaintiffs having made a case, entitling them to recover, should have had a verdict, unless the deeds take that right from them. The property in the deeds is not shown to have been equal to plaintiff's proportion of the intestate's estate, which should have been done, to justify the opinion of the court, even if the deeds do constitute an advancement. Our act of 1798, *ch.* 101, *sub-ch.* 11, *sec.* 6, does not make it necessary for a party to bring his advancement into *hotch-pot*. But the deeds do not constitute an advancement. To give them that effect, it must appear *affirmatively*, that such was the object of the parent. The great question in these cases always being to ascertain the intention of the parent. 4 *Kent Com.* 413. *Jameson's* deed shows a consideration moving from *Ford* to him. It was not therefore voluntary, which is essential to an advancement. *Stewart vs. The State*, 2 *Harr. and Gill*, 114. The inference from the deed is, that an advancement was not designed, or it would have been so expressed.

EARLE, J., delivered the opinion of the court.

The court's opinion, excepted to in this appeal, manifestly relates to a state of pleadings, and issue joined between the

parties, that do not appear in the record. The counsel in the cause admit the defect, and to save the expense and delay of a suggested diminution, have agreed, that we shall review the opinion below, as expressed in the bill of exceptions, upon the point, whether or not the deeds and evidence constitute an advancement in law, so as to preclude a recovery by the plaintiffs, of a distributive share of the estate of *Walter Jameson,* the father, without bringing the same into *hotch-pot.* It is understood too, that the generality of the prayer submitted by the defendants, is not to be noticed by us, in revising, and deciding on the opinion of the County Court. The case is an action instituted on the administration bond of *Luke F. Jameson,* administrator of *Walter Jameson,* father of the plaintiff, by *Sarah Q. Wilson,* to recover a distributive share of his personal estate, in nine parts to be divided, which from the inventory offered in evidence, appears in amount to be $3524 89. The defendant read in evidence the deed from *Walter Jameson* to *John E. Ford,* dated the 22d October, 1810, and the deed from *John E. Ford* to *Raphael Jameson,* bearing date the 31st October, 1810; and the plaintiffs having admitted they did not bring into *hotch-pot* the property received by them under the deed from *John E. Ford* to *Raphael Jameson,* the court instructed the jury, that under the evidence, the plaintiffs were not entitled to recover.

These being all the facts laid before the court and jury, we presume their honors thought, that the daughter had been advanced, by her father in his life-time, and that she, and her husband, could not sustain their suit, without bringing the advanced property into the reckoning, with the shares of her brothers and sisters.

Upon the question of advancement, we entirely agree with the County Court. The deeds offered in evidence are conveyances in trust, by the father, for the benefit of his daughter *Sarah* and others, and afford ample proofs, that she was advanced by the intestate in his life-time. We consider them as one instrument, and conveying estates in

trust; they are wholly unlike the bill of sale in the case of *Stewart vs. The State use of Riggen and wife.* That appeared to be an absolute transfer, for a valuable consideration of the property mentioned in it; and on a case stated, which was viewed as a special verdict, the court very properly refused to make inferences, to give a character to the deed different from what it purported to be on the face of it. But there is no need to go out of these deeds, or to have recourse to extraneous matter, to arrive at their true intention. No valuable consideration moves from the daughter *Sarah,* and so far as respects her, the conveyances are obviously voluntary and gratuitous. No account is given in the record, of the wife of *Walter Jameson,* but it would seem from the admissions of the plaintiffs, that her title to the negroes had ceased by her death or marriage. If she had at the trial been living and unmarried, we should nevertheless have been of opinion, that the plaintiff, *Sarah,* had been advanced by the settlement, or portion secured to her by the deeds. Her interest in the negroes in remainder, is a vested interest, and susceptible of valuation; and in the case of *Edwards and Freeman,* 2 *Pier. Wms.* 442, the Master of the Rolls says, that a reversion settled on a child, as it may be valued, is an advancement; and that a portion secured to a child, though in *futuro,* is a provision according to its value. In the remaining branch of the court's opinion, upon reflection, we cannot concur. To sustain the suit, there is no legal obligation on the plaintiffs, that we can perceive, to bring their advancement into *hotch-pot.* In the Orphans Court, the administrator may not have given them an opportunity to bring it into reckoning, and on a trial at law, we do not see well how they could do so. On the other hand, the defendant's evidence, that the plaintiff's wife was advanced by her father in his life-time, only goes to establish that fact, and is not of itself, sufficient to entitle him to a verdict. It is not every child that is advanced, the law excludes from the distribution. It is only such as are advanced by a portion equal, or superior, to a share. To

make then a full and perfect defence, it appears to us to have been incumbent on the defendant, to have gone a step further, and showed by testimony the value of the portion; and to have satisfied the jury, in the words of the act of 1798, *ch.* 101, *sub-ch.* 11, *sec.* 6, that it was equal or superior, to a child's share in the intestate's estate. This would have excluded the plaintiffs from participating in the father's personal property, and nothing short of this, it seems to us, could have defeated their action. Our judgment on this subject, is formed on the case before us, and is to be understood, to apply only to a trial in an action at law. In what way we should have viewed the same point, had this been a proceeding in a Court of Equity, for a distributive share, we are at present not prepared to say. It might have required a strict examination of the *British* authorities, and a close comparison of our act of assembly, with the statute of distributions,—the statute of 22 and 23 of *Chas.* 2, *ch.* 10, which in this case, we have not made.

We however decidedly think, that where more than one child has been advanced, the remedy at law by a suit on the administration bond, is by no means an adequate one. The settlement on the plaintiff in the action can alone be inquired into, and if taken into the distribution, he might be seriously prejudiced, having to divide with another, the amount of whose advancement ought to exclude him from sharing in the surplus. In such cases more perfect relief might be had in a Court of Chancery, where all the parties in interest may be brought before the court, and their respective rights adjusted, agreeably to the rules of equity, among the most just of which, is equality.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**