HEZEKIAH G. HAYDEN *vs.* H. D. BURCH AND WIFE, ET AL.—*June* 1850.

A father purchased land and paid for it with his own money, but had the title conveyed to his son, who entered into possession and disposed of it as his own property. HELD: that the money advanced, being for the purchase of land, must be treated as land, and this transaction must be regarded as an advancement in real estate.

With the real estate of the deceased, when and how he has disposed of it to his children, the orphans court has no concern : controversies with regard to real estate, must be settled in a different *forum.*

The position that the distribution of realty with personalty in *hotchpot*, is a legal or proper subject for the action of an orphans court, is not sanctioned by authority.

The acts of Assembly, from which the orphans courts derive their powers, restrict the action of those courts in cases of intestacy, entirely to the personal assets ; none of them confer any jurisdiction over the realty,

The provision of the act of 1798, which requires the settlement or portion advanced in the lifetime of the intestate, to be brought into *hotchpot,* can be applied only to a case of total intestacy.

APPEAL from the orphans court of *Saint Mary's* county.

The appellees, heirs and distributees of *Peregrine Hayden,* deceased, filed their petition in the orphans court of *Saint Mary's* county, on the 6th of December, 1849, charging that the appellant, who was one of the sons and distributees of the deceased,

had received large advancements from his father in his life time, which they pray may be deducted from his distributive share of the deceased's personal estate, all of which the appellant denied by his answer.

Testimony was then taken, by which it was proved that the intestate purchased a tract of land for $1800, and paid for it with his own money, but had the title conveyed to his son, the appellant, by a deed from the parties in whom the legal title was vested, dated 3rd of March 1832. It was also proved, that in 1824, his father gave the appellant several negro slaves. It was further proved, that the father gave up to to the appellant, the latter's note, which he held for $1000, but it was shown that this was done by the father in consideration of valuable services his son had rendered him. A will of said *Peregrine Hayden* was also exhibited, executed on the 29th of February, 1848, in presence of two witnesses, confirming freedom to certain negroes therein named, whom he devised to the appellant, in trust, to receive their freedom whenever they shall determine to emigrate to a free state or to *Liberia*, but should they determine to remain in this State under existing laws, the appellant was still to hold them in trust, to aid them in their support, and permit them to live on testator's land free of rent. This will also states, that having executed a deed of manumission to said slaves, "it is my wish, in the event of the said deed proving inadequate to secure their freedom, that this my will and testament may take effect for the object and purpose herein declared and set forth."

Upon this testimony, the orphans court passed a decree on the 21st of March, 1850, that the appellant should be charged with the value of the negro slaves advanced to him by his father, but declined to make any allowance on account of the land, for want of jurisdiction, and rejected the charge on account of the notes. From this decree the appellant took an appeal.

The cause was argued before Dorsey, C. J., Magruder, Martin and Frick, J.

By Thos. S. Alexander for the appellant, and
By Causin for the appelles.

Frick, J., delivered the opinion of this court.

The decision of the question submitted in this case, depends upon the construction of the acts of Assembly in relation to the estates of deceased persons, and the powers conferred by them upon the several orphans courts of the State.

The intestate, the father of the appellant, in his lifetime, bought the land in question for $1800. By his consent and direction, the deed of conveyance was made to the son, who passed into possession of the land, and held and disposed of it afterwards as his own property. The entire purchase money was paid by the father. The proceedings among the parties by which the sale was perfected, are fully detailed in the record, and recited in the deed, and although somewhat complicated, indicate that the course adopted was to avoid a circuity of deeds, and to secure a direct conveyance to the person who should be entitled to receive it. It is sufficient for the purpose of the present inquiry, that the father bought the land and paid the money, but the son received the title.

It has been urged in argument that the transaction should be regarded as an advance of money on the part of the intestate, and to the extent of the sum advanced, it is claimed that the amount should be abated from the appellant's distributive portion of the personal estate. So to regard it, would obviate all further inquiry and the appropriation of it in the form indicated, would be the necessary consequence. But our conclusion from the facts in the record are different, and requires us to pronounce it an advancement in real estate. The father did not advance the money to the son to buy the land, but bought it himself from *Key*, the grantor in the deed. But the land being designed for the son, it would have been a needless and superfluous act, to take the conveyance to himself and then convey to the son. Besides there were other preliminaries in relation to a previous exchange of lands, more fully explained in the record, which necessarily precluded the execution of any

conveyance. These being adjusted according to the under-
standing of all parties, the conveyance, as the simplest mode of
carrying out the design of the intestate, was executed directly
to the beneficiary, the appellant. From him no other or addi-
tional consideration than the nominal one passed to the gran-
tor. Were it otherwise, still the money advanced being for the
purchase of land, must, in such case, be treated as land. We
entertain no doubt, however, that it was the manifest design of
the intestate to bestow land and not money. That the title
was never in him, and was made to pass from a stranger to the
grantee, does not vary the legal import of the transaction. It
must be regarded as an advancement of real estate. So treat-
ing it, it has been further urged in argument, that there is
nothing which forbids the orphans court from dealing with it,
as an advancement to the appellant, and abating the value
from his distributive share of the personal estate. But the re-
cent decision of this court in the case of *Patterson's heirs*, 8
*Gill*, 46, decided upon the eastern shore, precludes all further
questions on this point. It is there said, that "with the real
estate of the deceased, when and how he has disposed of it to
his children, the orphans court have no concern. Contro-
versies with regard to the real estate must be settled in a differ-
ent *forum*." Nor does the decision in the case of *The State,
use of Wilson, vs. Jameson*, in 3 *G. & J.*, 442, cited by the
counsel for the appellees, contravene this proposition. That
was an action *in the county court* by the distributees, upon the
bond of the administrator, in which it was attempted to set off
an advancement by the intestate in his lifetime, by a gift of
real estate. Although it is intimated there, that in a proper
form of pleading it might be used in that court as a bar to the
action, yet it is announced decidedly by the court, that the
proper *forum* for relief in all such cases, is in a court of chan-
cery, where the respective rights of all may be adjusted agreea-
ble to the rules of equity. And in the case cited from 5 *H.
& J.*, 459, *Warfield vs. Warfield*, no reference is had to the
personal estate of the intestate; and in that aspect only, con-
firms the position that the true *forum* for relief against an

alleged advancement of real estate, is a court of equity. The assertion that the distribution of the reality with the personalty in *hotchpot*, is a legal or proper subject for the action of an orphans court, is not supportable by these cases, nor is it any where sanctioned by authority. The several acts of Assembly from which the orphans courts derive their powers, restrict the action of those courts in cases of intestacy, entirely to the personal assets. None of them confer any jurisdiction over the realty.

So far then as the action of the orphans court of *St. Mary's* county is concerned upon this branch of the case before them, they were right in declining to act upon it. But there is also a state of the case further disclosed in the record, which equally forbids their treating any portion of the personal estate as an advancement. The act of 1798, which requires the settlement or portion advanced in the lifetime of the intestate, to be reckoned in the surplus, contemplates in the judgment of this court, a total intestacy. And however meagre the provisions of the paper may be which is produced as the will of *Peregrine Hayden*, it must nevertheless be construed as a disposition of a portion of his estate. It purports to give or to confirm the freedom bestowed upon certain slaves by a deed of manumission previously executed by him, and which this will, by a trust provision in it, purports to secure to them in " the event of the deed proving inadequate to secure it." It contains no other disposition, unless the contingency upon which the support of these negroes is there required, be considered a charge upon his real estate. No executor is named, nor is reference made to any other property which he owned at the time. And if a deed of manumission had been produced to satisfy the court that in all respects it was adequate to secure the proposed freedom of these negroes, we should hesitate to pronounce it a will, in view of the act of Assembly. In that event it could be but an asserted control over property with which he had already parted, and over which he had no testamentary disposition. But in the absence of any means of testing this alleged manumission, with his own doubts expressed as to its effica-

cy, it is not for this court to say that it legally divested him of all property in these slaves.   And if it does not, this will is a partial disposition of his property, which avoids the intestacy contemplated by the act of 1798.   By that act the surplus is constituted of *the whole estate*, after the payment of debts and the advancement charged is directed to be reckoned in the surplus.   We are not at liberty to depart from the express provisions of the act which it is here manifest contemplates a total intestacy.   By any other construction, the disposition of three-fourths of an estate, by will, would still leave a surplus, in common acceptation, and every such case of a residuum, would constitute an intestacy.   But the provisions of the act can only be applied to a case of total intestacy.   And the will before us, for the reasons stated, being operative, and constituting a partial disposition of property by the testator, we are compelled to decide, that the case presented to the court below was not within the act, and so far as their decree abates any portion from the appellant's share of the personal estate, we are bound to *reverse it*.   In the remainder of the decree we concur.

DECREE REVERSED AND PROCEDENDO.