IN THE MATTER OF THE ESTATE }   DECEMBER TERM, 1851.
OF NOTLEY YOUNG. }

———

[HOTCHPOT—PAROL PROOF TO CONTRADICT OR VARY THE TERMS OF A DEED—CONSTRUCTION OF DEEDS—ACT OF 1825, CH. 50, RELATING TO MORTGAGES—CHANCERY PRACTICE—ATTORNEY—LIMITATIONS.]

———

THE right which the heirs have, that the estate advanced should be brought into hotchpot, is a legal right, and no alienation or incumbrance placed by the heir advanced upon the property given by way of advancement, can defeat it.

The insolvency of the personal estate of the ancestor constitutes, in a Court of Equity, no objection to bringing an advancement of personalty into hotchpot with real estate, or the proceeds of real estate.

Where a deed is not attacked upon the ground of fraud, accident, or mistake, parol evidence is inadmissible to add to, vary, or change its terms.

When a deed is impeached for fraud, by disproving the consideration expressed in it, a different consideration changing its character cannot be set up.

Where the consideration has not been disproved, parol evidence of the same kind of consideration, differing only in account, may be offered to rebut any imputation of fraud attempted to be cast upon the deed.

A husband executed a mortgage to secure a debt, and after payment thereof the mortgagees were to hold the property, or convey it to the appointee of the grantor's wife for her separate use; and on the same day, the husband and wife assigned to the same mortgagees, the wife's interest in the real estate of her father.   HELD—

That the mortgagees had a perfect right to resort to either, or both of these securities, for the payment of their debt; and all that the wife can demand is, that after payment of their claim, they shall convey to her appointee the property mentioned in the mortgage of the husband.

A stipulation in a mortgage to secure a specific sum, that it should cover

such further sum as might become due the mortgagees for costs, charges, and commissions, is not effectual since the Act of 1825, ch. 50.

The policy of that Act is, that the utmost extent to which the mortgaged premises can be made liable, must appear upon the face of the instrument; and provisoes that the mortgage shall be a security for future liabilities, or advances, are forbidden by it.

Where a term intervenes after the passage of an order, it is considered as enrolled, and cannot be reheard upon petition; the only remedy in such cases, is by bill of review for error appearing upon its face, or new matter discovered since.

An administratrix employed an attorney to collect certain claims due the estate of the intestate; and suits were instituted upon some and judgments recovered upon others, when she died, and the claims were passed to the administrator *d. b. n.* HELD—

That under such circumstances, the administrator *d. b. n.* has the right to change his attorney; but the commissions should be equally divided between the attorney first employed and the one who may collect the money.

The plea of limitations only enures to the benefit of the party pleading it.

———

[The real estate of Notley Young, deceased, who died intestate, was sold under the proceedings in this case, in aid of his personalty, for the purpose of paying his debts, and distribution amongst his heirs-at-law. Several questions arose in the progress of the cause, upon which the Chancellor delivered opinions. The first question was upon two petitions of Clement Young and Julia F. Young, infant defendants and heirs-at-law of the deceased, by William A. Brady, their guardian *ad litem* and next friend, filed on the 14th of February, and 25th of March, 1851. One of these petitions alleges that Notley Young, the intestate, in his lifetime advanced to his daughter Heloise, the wife of George H. Smith, a negro slave of the value of $1,000, and stock in the Bank of Metropolis to the value of $2,000, that this advancement so made ought to be treated as made on account, and in part of the share of the intestate's estate, to which the said Heloise is entitled, as one of his children, heirs-at-law, and personal representatives; that by the Auditor's account reported in this cause, there is shown to be a large surplus of the proceeds of said estate, which has been distributed equally to said Smith and wife and other heirs-at-law, by which apportionment petitioners are

aggrieved, and they therefore pray that the case may be remanded to the Auditor, to restate his account, so as to bring the said advancement into hotchpot with the residue of said estate now to be distributed, and that Smith and wife may be chargeable with said advancement, and for general relief.

The other alleges that the intestate, by deed of gift dated 4th of March, 1846, conveyed to his daughter Martha certain real estate lying in the District of Columbia, now of the value of $4,000, that by another deed of gift he also conveyed certain slaves to the said Martha of the value of $3,000; that the value of this real and personal estate exceeds a child's portion of the intestate's estate, and prays that it may be brought into hotchpot in the division of the fund now in Court. This petition also alleges the death of the said Martha, leaving a will, and makes her devisees and legatees parties to the proceedings. The answers and the facts proven in the case are sufficiently stated in the following opinion of the Chancellor, delivered at the hearing of these petitions on the 11th of November, 1851.]

THE CHANCELLOR:

This case was submitted during the sittings of the term, upon the petitions of Clement Young and Julia F. Young, infant defendants, by their guardian, William A. Brady, and now, at the close of the sittings, is laid before the Court in conformity with the rule.

The petitions, which were filed on the 14th of February and the 25th of March, 1851, allege that Notley Young, the intestate, and the father of the petitioners, in his lifetime conveyed gratuitously, as an advancement to his daughters, Martha Young and Heloise Smith, certain parcels of his real and personal estate, which the petitioners insist should be treated as a part of the shares to which the said Martha and Heloise would be entitled, as two of his heirs-at-law and personal representatives.

The personal estate of the said intestate proving inadequate to pay his debts, upon a bill filed by his creditors, the realty

has been sold in aid of the personalty, and as appears by the report of the Auditor, a considerable surplus of the proceeds of the realty remains for distribution among the heirs-at-law, which by said report has been equally distributed, no deduction being made from the shares assigned to said Martha and Heloise, on account of the property so advanced to them. And the petitioners pray that the accounts may be remanded to the Auditor, with directions to restate them, so as to bring the said advancements into hotchpot with the residue of the said estate now to be distributed.

The answer of Heloise Smith and her husband, George H. Smith, may be treated as denying the allegation of the advancement to the wife, though its statements are not very explicit or satisfactory. But, conceding that it does deny the allegations, I consider the proof of the advancement quite strong enough to overthrow the answer, and I am also of opinion, that if the property so advanced to Mrs. Smith, in case any of the personal estate remained for distribution, was equal to or superior in value to her share of such surplus, she would be excluded unless she brought it into the reckoning. *Act of* 1798, *ch.* 101, *sub-ch.* 11, *sec.* 6, *State use of Wilson and Wife* vs. *Jameson*, 3 *G. & J.*, 442.

Martha Young being dead, the petition setting up the advancement to her, which consisted of real and personal estate, has been answered by her executor, devisees, and legatees, and certain parties claiming under a deed executed by her on the 20th of March, 1848, for the purpose of indemnifying one of them from responsibility, as her surety in her bond as administratrix upon the estate of her father. It is objected, on the part of the respondents, that inasmuch as it does not now, at this time, certainly appear, whether the surety in the bond will or will not be damnified, the proceeds of the real estate should not be impaired or withdrawn from the control of the trustees under the deed, until the final settlement of the estate of the said intestate shall show conclusively that no such loss or damage will result to the surety. They say that when the responsibility was assumed, and the deed of indemnity was

taken, they had no notice of the advancement, and consequently that the advancement should not be brought into hotchpot, so as to diminish her share of the proceeds of the real estate now to be distributed, as thereby the fund to protect her surety from loss would be diminished.

The answer to this is that the right which the heirs have, that the estate advanced should be brought into hotchpot, is a legal right, and that no alienations or incumbrances placed by the heir advanced upon the property, given by way of advancement, can defeat that right. If it were otherwise, it would at all times be in the power of the heir receiving the advancement to escape the application of the law upon the subject, by disposing of or incumbering the estate given him by his ancestor.

These parties further insist, that forasmuch as the personal estate is insolvent, and the fund now for distribution results from the sales of real estate, they are under no obligation to answer that portion of the petition which refers to donations of personal estate, the ground assumed being that real estate is to be brought into hotchpot only with real estate, and personal estate only with personal estate.

This position, however, seems to me in opposition to the opinion of the Court of Appeals in the case of the *State use of Wilson* vs. *Jameson,* 3 *G. & J.,* 342, in which it is very distinctly intimated that a Court of Equity will not suffer itself to be baffled by any technical objection of this nature, but will take care, in cases like the present, that the rights of all parties in interest are adjusted " agreeably to the rules of equity, amongst the most just of which is equality." Indeed, from the language of the Court in the case referred to, it may be very fairly inferred, that in an action at law on an administration bond, to recover a distributive share of the personal estate, the defendant may avail himself to defeat the action of an advancement to the plaintiff of real estate, if he avers in his pleadings, and shows by the evidence that the property advanced was of equal or superior value to the plaintiff's share of the estate, though it was said that a Court of Equity would be the more appropriate tribunal for the settlement of such questions.

And the same view of the subject is plainly announced by the Court of Appeals, in the case of *Hayden* vs. *Burch et al.*, 9 *Gill*, 79. I am, therefore, of opinion, that the insolvency of the personal estate constitutes in this Court no objection to bringing the advancement in question into hotchpot, with the real estate or the proceeds of the latter now to be distributed.

———

[The next opinion was delivered upon the petition of George F. Maddox, as trustee of Heloise Smith, filed on the 25th of February, 1851. This petition alleges that George H. Smith, having antecedently used a large amount of his wife's property, on the 27th of January, 1849, conveyed to Neale and Luckett, of Baltimore, certain personal property, by way of mortgage, to secure a debt of $3,336, due by him to them, upon consideration that after payment of their debt, they should hold and retain, or convey to such person or persons as the said Heloise might, by writing, appoint, to and for her sole, separate, and exclusive use, as will appear by reference to said mortgage, filed as Exhibit A. That in consideration of making this mortgage and conditions therein contained, the said Heloise and her husband, on the same day, mortgaged to Neale and Luckett the interest of said Heloise in the estate of Notley Young, her deceased father, as a conditional security for their said debt, as appears from Exhibit B, said mortgage. That Neale and Luckett have filed Exhibit B in this cause, and the Auditor has allowed them the amount of said debt out of said Heloise's share of the estate of said Young, as appears by the Auditor's account. That notwithstanding said allowance, by which Neale and Luckett will receive full satisfaction of their debt from said interest of said Heloise, they afterwards sold the property mortgaged to them in Exhibit A, the holding or conveying of which to the appointee of said Heloise, was the only consideration upon which she executed Exhibit B. That by deed, duly executed, the said Heloise appointed George C. Morgan and the petitioner her trustees, to hold and receive all the property, real and personal, she might have or be entitled to ; and that said Morgan has refused to act as one of

said trustees, whereby petitioner is left the sole trustee. That Exhibits A and B are evidence of the facts and conditions therein contained, and the petition then prays that the mortgage debt allowed Neale and Luckett, in Account C, may be disallowed and rejected, and for general relief.

The answer of Neale and Luckett denies that the mortgage executed by Mrs. Smith was ever intended or received as a conditional security, but was executed and received as an absolute one, to be made available at the very earliest proper moment, and that the securing any interest in her husband's property to her, was any condition or consideration precedent to her executing the same, and avers that a greater portion of the property mortgaged to them by Smith, belonged to the estate of his father, and that they, having consulted counsel as to the title thereto, surrendered their interest in the same to the administrator *d. b. n.* of said Smith's father; that they then sold that portion which belonged to Smith, from which they realized $500, with which they credited him, and that there still remains due them a considerable amount over that awarded them by the Auditor's account.

Upon this petition and answer, the Chancellor delivered the following opinion, on the 20th of November, 1851, in which the facts of the case will be found sufficiently stated.]

THE CHANCELLOR:

Assuming that no technical objection exists to granting the prayer of the petition filed by George F. Maddox, trustee of Heloise Smith, on the 25th of February, 1851, the fate of the petition must depend upon the construction of the two deeds of the 27th of January, 1849, exhibited with it. For I entirely agree with the counsel, that those deeds are to be regarded as part and parcel of one and the same transaction, and that the rights of the parties are to be determined upon their legal effect, irrespective of the parol evidence, which being excepted to, must be rejected as inadmissible, there being no allegation or proof that any term or stipulation contained in them, resulted from fraud, accident, or mistake, or that from any one of

these causes, anything was omitted which should have been inserted.  This principle is established by an unbroken current of authority; and it is equally well settled, that when a deed is impeached from fraud, by disproving the consideration expressed in it, a different consideration changing its character cannot be set up.  *Betts* vs. *Union Bank*, 1 *H. & G.*, 186 ; *Clagett and Hill* vs. *Hall*, 9 *G. & J.*, 81 ; *Harris and Chauncy* vs. *Alcock*, 10 *G. & J.*, 248 ; *Cole* vs. *Albers and Runge*, 1 *Gill*, 412.

In this case, the deeds in question have not been impeached, by disproving the consideration expressed in them, and therefore, according to the doctrine of the case last referred to, it would be competent to offer evidence of the same kind of consideration, differing only in amount, to rebut any imputation of fraud which might be attempted to be cast upon them. But except under such circumstances, and for such purpose, it is in opposition to one of the best-established principles of the law of evidence, to permit the introduction of parol proof, to add to, vary, or change the terms of the written contract.  9 *G. & J.*, 91.

I therefore consider the parol proof offered in this case, in so far as it may affect the construction or legal effect and operation of the deeds, by showing that other considerations than those displayed upon their face, influenced the parties in executing them, as inadmissible, and shall proceed very briefly to examine into their merits, as they depend upon the deeds themselves.

The deed which is referred to as Exhibit A, is a mortgage executed by George H. Smith to Neale and Luckett, of sundry negroes, and other articles of personal property, to secure the payment of $3,336, due from Smith to the grantees, partly upon judgment, and partly upon drafts, the deed reciting that Neale and Luckett, in consideration of further security, had agreed to suspend executing their judgment, and further reciting that Smith, having paid to them and other persons large amounts of money of the separate estate of his wife, and that it was always intended, as it was just, he should repay

and secure to her the sums so advanced for him, or in payment of his debts, and the more especially, as his wife, by her deed of the same date, had pledged to the said Neale and Luckett, for the payment of the debt thereby secured, her whole undivided interest in the real estate of her father. The deed then proceeds to declare that the property thereby conveyed, is mortgaged to Neale and Luckett, to secure them the full payment of said debt, together with all lawful costs, charges, interest, and commissions ; and that after such payment, they (the grantees) should hold and retain, or convey to such person or persons as the said Heloise Smith, by writing signed by her, may direct and appoint, to and for her sole and separate use.

The deed, marked Exhibit B, is executed by Smith and his wife. It recites the indebtedness of Smith, the husband, to Neale and Luckett, in the sum mentioned in the mortgage already referred to, the execution of that mortgage, the provision for the benefit of the wife ; and that the execution of this deed by the husband and wife was one of the considerations upon which the deed of the husband was executed ; and then says that "in consideration of the premises and of one dollar to them paid," they, Smith and wife, "have granted, &c., and by these presents do grant, &c., to the said Neale and Luckett, their heirs and assigns, all the undivided one-fourth part or interest of the said Heloise, in and to the real estate of her father, Notley Young, deceased ;" "to have and to hold to them, the said Neale and Luckett, their heirs, &c., for ever, with full power to take and receive any notes, bonds, securities, or otherwise, which may or might otherwise belong, or be executed to said Heloise, or for her benefit, from or on account of any sale, division, or other lawful disposition of said property in settlement of said deceased's estate ;" "provided that if the said debt, as aforesaid, shall be paid or satisfied with all costs, charges, and lawful commissions which may arise thereon, before such payment or satisfaction, &c., then these presents shall be void, otherwise to be and remain in full force and effect."

After the sale of the estate of Notley Young, the mortgagees,

Neale and Luckett, filed a copy of this mortgage or assignment of the interest of Mrs. Smith therein, in this Court, and the auditor, by an account marked C, appropriated, of the proceeds of sale to which Mrs. Smith was entitled, the sum of $3,286 50 to Neale and Luckett, making a rebate from the face of the assignment, of $50 39, the debt from Smith to them not having all matured, and on the 15th of November, 1850, this account was confirmed by the Court's order, so far as the assignment to Neale and Luckett, and the claims of other parties, against which objections had not been interposed, were concerned.

The application now on the part of the petitioner, the trustee of Mrs. Smith, is, that the account C may be corrected, and this claim of Neale and Luckett disallowed and rejected. And this application is founded upon the following averment in the petition, "And your petitioner would further state, that notwithstanding said allowance" (meaning the allowance of the claim of Neale and Luckett, in account C), "by which said Neale and Luckett will receive full satisfaction and payment from the interest of Mrs. Smith in said estate, they, the said Neale and Luckett, afterwards sold the property mentioned in the mortgage from Smith the husband to them," thus in effect charging, though the amount to which the sales were made is not stated, that these gentlemen, if permitted to receive the sum awarded them in the account by the auditor, will be twice paid.

The answer of Neale and Luckett to the petition, states, that much of the property mortgaged by Smith to them, belonged to the estate of his father, and that the sales made of that portion which really belonged to him, amounted only to $500, leaving a balance due them exceeding the sum allowed them in the account of the auditor.

The argument now made on the part of the petitioner is, that inasmuch as Neale and Luckett have by their answer admitted that they surrendered to the administrator *d. b. n.* of the father of Smith, a portion of the property conveyed to them by the deed of Smith, they are incapable of performing that con-

dition of the deed which required them to hold the property for the separate use of Mrs. Smith. But this argument puts the petitioner's right to relief upon a ground different from that taken in the petition. The petition does not allege that they (Neale and Luckett) surrendered the property or any part of it to other persons, thereby defeating one of the stipulations of the deed, but that they sold it, though by the deed they should have held or conveyed it to some persons to be named by Mrs. Smith, for her separate use, that being the only condition upon which she had conveyed her interest in the estate of her father.

Assuming, however, that the petitioner, though he has alleged a sale, may rely upon the answer as a ground of relief, it does not by any means follow, that he has a right to take from Neale and Luckett, the money which has been awarded them in this case. The mortgage from Mr. Smith to these parties says, " that after the full payment of their claim, the said Neale and Luckett the property aforesaid shall hold and retain, or convey to such person or persons, &c., as Mrs. Smith, by writing, may direct and appoint, for her sole and separate use."

Now in their answer, they say that the larger portion of the property conveyed by the mortgage executed by Smith, was claimed by the administrator *d. b. n.* of his father, and that though they considered themselves amply secured by the assignment or conveyance of Mrs. Smith, they employed counsel to examine into the question of title, and their counsel being of opinion that the title of Smith was defective, they did agree to surrender *their interest* in the same to the administrator *d. b. n.*, " expressly reserving, however, all right or claim which Mrs. Smith might have thereto or therein, and offering to the counsel of Mrs. Smith the use of their names for the purpose of prosecuting or maintaining any such right, and tendering themselves ready to transfer to her trustee the interest in the mortgage which they might represent for her."

Now I cannot think, that by such conduct as this, Messrs. Neale and Luckett have forfeited their right to look to the proceeds of the property sold in this cause, for the reimburse-

ment of the debt due them from Smith. They had a perfect right, in my opinion, to resort to either, or both of these securities, for the payment of the debt due them; and all that Mrs. Smith can demand is, that upon satisfaction of their claim, they shall convey to such persons as she may appoint the property mentioned in the mortgage of her husband, for her separate use. This they offer themselves ready and willing to do, and it is all that can be asked of them. It is nowhere alleged or pretended that the safety of the property in the mortgage from Smith, the husband, has been endangered, or its value impaired by any act attributed to these parties; and so far from their being under an obligation to proceed first against the property mentioned in it for their satisfaction, it seems to me quite manifest, from the terms in which the two deeds are couched, that it was the desire and intention of the parties that satisfaction should be made out of the proceeds of the real estate, rather than from the personal estate mentioned in the mortgage executed by Smith, the husband. This conclusion, I think altogether reasonable, when it is remembered, that with reference to the proceeds of the real estate, no provision is made for securing these proceeds for the separate use of Mrs. Smith; whilst with regard to the personal property, mentioned in the mortgage, such a provision is carefully introduced. The inference, I think, is very fair from this, that it was the intention and expectation of the parties that the debt of Neale and Luckett should be paid out of the proceeds of the real estate.

It will be seen, from what has been said, that I do not think the title of Neale and Luckett to be paid their claim out of the proceeds of this estate, depends upon the recovery from them, by legal proceedings, of the personal property conveyed by the mortgagee. My opinion is, that assuming the facts to be as stated in their answer, and they are not only uncontradicted but sustained by the evidence, all that Mrs. Smith or her trustee can demand is, that when Neale and Luckett are paid, they will convey to Mrs. Smith's appointee, as provided for in the mortgage; and this they profess themselves ready to do.

I should have thought, however, but for the additional exception filed on the part of Mrs. Smith, that the letter from George C. Morgan, Esq., to the solicitor of Neale and Luckett, stating the fact of such recovery against Neale and Luckett, in Saint Mary's County Court, would be received as evidence. Being excepted to, however, it of course is incompetent proof, as, without an agreement, the record of the recovery must be produced.

But Neale and Luckett insist that they are not only entitled to receive from the proceeds of these sales the sum which has been allowed to them, but that out of that portion of said proceeds which has been awarded to Mrs. Smith, they should have an additional amount, upon the ground that her deed or assignment to them covers not only the sum specifically mentioned, but such further sums as might become due them for costs, charges, and commissions. It is true, the deed does contain such a stipulation; but, in my opinion, having been executed since the Act of 1825, ch. 50, the stipulation is not effectual. This question was considered by the Court of Appeals, in the case of *Cole* vs. *Albers and Runge*, 1 *Gill*, 423, 424. The mortgage in that case was to secure the mortgagees to the extent of $10,000. It was in evidence, that at the time of its execution there was due from the mortgagor a less sum; but that the mortgagees were responsible for him for other sums, and it was the intention of the mortgage, as shown upon its face, to protect them to the amount of the $10,000 mentioned as the consideration. The Court, in that case, held that the mortgage was a valid security to the amount of $10,000, because that sum being mentioned in it, no one could be deceived or prejudiced; but they express a decided opinion, that the practice of taking mortgages to secure specified sums with a clause providing that the mortgaged premises shall be held as a security for future liabilities or advances by the mortgagees to the mortgagor, is forbidden by the Act of 1825, ch. 50. That it is the policy of that Act, that the utmost extent to which the mortgaged premises can be made liable, must appear upon the face of the instrument, and that

words merely indicating that further responsibilities may be assumed or advances made by the mortgagee to the mortgagor, by which the creditors of the latter may be defrauded by combinations between the parties to the instrument or by the acts of the mortgagee alone, will not avail; and that notwithstanding the introduction of such terms, the mortgage will only operate, either in law or equity, as a lien or charge on the property mortgaged to the extent of the sum or sums which may appear on its face. This Act of Assembly, therefore, as interpreted by the Court of Appeals in the case referred to, limits these mortgagees, Neale and Luckett, to the sum which, upon the face of the instrument, is specifically secured by it.

But if this difficulty could be overcome, there is another objection to granting either the prayer of the petition, or the application of Neale and-Luckett to rescind the order of the 15th of November, 1850, and reform the account which by that order was ratified and confirmed, which appears to me to be insuperable. Between the passing of that order and the filing of the present petition, the whole of the December Term intervened, from its commencement to its close; and the order, therefore, which is equivalent to a decree, must be regarded as enrolled. *Burch et al.* vs. *Scott,* 1 *G. & J.,* 393. And being so enrolled, the cause cannot be reheard upon petition, the only remedy of the party against whom the decree was passed, being a bill of review for error appearing on its face, or upon some new matter discovered since. *Ibid.,* 424.

I am, therefore, of opinion that the petition must be dismissed, and the order of the 15th of November, 1850, be permitted to stand.

———

[The last opinion in the case was delivered on the 17th of January, 1853, upon the question as to the allowance of commission to the attorney for the collection of certain claims due the estate, and upon exceptions filed to the Auditor's account. The facts, in relation to these points, sufficiently appear in the opinion itself.]

THE CHANCELLOR:

This case is submitted, and has been argued by counsel upon agreement and statement of facts, filed on the 20th of November, 1849, for the purpose of taking the opinion of the Court in reference to the right of the executor of Martha Young, who was the administratrix of Notley Young, to commissions claimed by John B. Brooke, Jr., the attorney employed by her to collect certain *choses in action* due the estate of her intestate. Upon the death of Martha, the administratrix, letters *de bonis non*, on the estate of Notley Young, were granted to Clement Young and C. C. Magruder, who, under the Acts of Assembly relating to the subject, claimed to have paid over to them the said *choses in action*, and this was done without prejudice to the right of the said Burke, to the usual commissions allowed attorneys upon collections. The statement of facts show that some of the claims had been reduced to judgment, whilst upon others suits had been brought, which were still depending.

The question presented by this statement is, whether the employment of an attorney to collect money, confers upon him the authority to proceed with the collection, notwithstanding his client may die, and the right to the claim devolve upon another, which latter may himself be an attorney, or may prefer intrusting the collection to some one else? I entertain no doubt, that under such circumstances, the party may change his attorney. The right is, I think, strongly implied in the case of *Henck* vs. *Todhunter*, 7 *H. & J.*, 275. Even when the title to the cause of action has not devolved upon another party by the death of him for whom the suit was brought, but when such is the case, and this other party is responsible, and is required to see that reasonable diligence is used for the collection of the money, it would seem impossible to deny him the privilege of selecting the agent to whom he may prefer confiding the duty.

I think, then, the administrators *de bonis non* had the right of placing these claims in whosesoever hands they pleased for collection; but in the exercise of this right, justice should be

done the attorney who had instituted the suits and obtained the judgments, and this, I think, will be accomplished by dividing the usual commission of five *per centum* equally between him and the attorney by whom the money may be collected, and an order will be passed accordingly; the said commissions to be paid out of the interest upon the proceeds of the sales of the personal estate already received or to be received.

In addition to the above question, exceptions to the Auditor's report have been submitted, in pursuance of a previous order, and upon these, the counsel of some of the parties interested have been heard.

The Auditor, in his report of the 2d of July, 1851, after enumerating certain claims not objected to, and others, in regard to which the objections have been removed, says, "All the other claims reported as having been objected to by the Auditor or the parties, are still subject to such objections."

Claims numbered 19 and 20 appear to be proved, but are subject to the plea of limitations, which plea, however, can only enure to the benefit of the party pleading it.

Since the report of the Auditor of the 2d of July, 1851, further proof has been taken in support of several of the claims, but upon many of these, it does not appear that the Auditor has yet reported, and I deem it better to submit the new proof to him for examination, before expressing an opinion upon its effect; with regard, however, to a few of the claims to which my attention has been particularly directed, and in reference to which the proof is supposed to be full, I purpose to express an opinion.

In my opinion, claims numbered 48, 49, and 51 are fully proved, and the defence of limitations relied upon by Smith and wife, is overthrown by the testimony of A. Anderson, filed on the 31st of December, 1850.

The claim No. 91, I think, is proved, though it appears to be subject to the plea of limitations, which has been relied upon by some of the parties. The same remarks apply to

claim No. 106, which, though proved, is likewise exposed to the operation of the same plea.

There is much difficulty in making a disposition of claims Nos. 41, 53, and 82. They appear to be proved, but limitations are relied upon by some of the parties, and the envelopes, upon which it is presumed the precise time when they were filed, would appear, have in some way been lost, and it is therefore impossible to fix the period with certainty. A deposition upon the subject, made by N. C. Stephen, Esq., the solicitor having the charge of the claims, has been filed, but this is rather indefinite and unsatisfactory. Under all the circumstances, however, the Chancellor thinks the presumption is, that the claims reached the office in due course of mail, and were filed the day the letter containing them ought to have been received, and the Auditor, in stating the account about to be ordered, will so assume.