SWITKES, as Widow and Administratrix *v.* JOHN McSHAIN, INC., et al.

[No. 132, October Term, 1952.]

*Decided May 14, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*S. Alfred Mund* and *Julius G. Maurer, for appellant.*

*C. Damer McKenrick,* with whom were *Bartlett, Poe and Clagett,* on the brief, for appellees.

HAMMOND, J., delivered the opinion of the Court.

Isadore Switkes, having sustained an accidental personal injury, duly filed a claim for Workmen's Compensation with the State Industrial Accident Commission on June 22, 1951. After testimony had been taken on three occasions, the Commission, on June 30, 1952 disallowed the claim on the ground that the injury did not arise out of and in the course of his employment. Switkes died on July 8, 1952, and two days after his death, his lawyers filed in the Court of Common Pleas of Baltimore notice of an appeal (a copy having been served the same day on a member of the Commission) in the following form:

> "Isadore Switkes, Claimant, by S. Alfred Mund and Julius G. Maurer, his attorneys, feeling aggrieved at the order and decision of the State Industrial Accident Commission . . . enters an appeal . . ."

On August 1, 1952 the appellees moved to dismiss the appeal because (a) the appellant was dead when it was taken, and (b) the widow and administratrix did not appeal or enter the case within the time allowed by law.

The appellant contends, in effect, that since the employer and insurer, the appellees here, received actual notice of the intention to appeal within the prescribed

time, they have not been prejudiced, and the appeal should be considered as having been taken by the widow and administratrix, since she ratified the action taken in the name of her dead husband.

The right to appeal in Workmen's Compensation cases rests solely on the statute. Section 57 of Article 101 of the Code (1951 Ed.) reads, in its pertinent parts, as follows:

> "Any employer, employee, beneficiary or person feeling aggrieved by any decision of the Commission affecting his interests under this Article, may have the same reviewed by a proceeding in the nature of an appeal and initiated in the . . . Courts . . . having jurisdiction. . . No such appeal shall be entertained unless notice of appeal shall have been served personally upon some member of the Commission within thirty days following the rendition of the decision appealed from. . ."

The appeal may be taken only by an employer, an employee, or a "person feeling aggrieved by any decision of the Commission affecting his interests under this Article. . ." Certainly, the dead man cannot be regarded as coming within any of the categories. This Court said in *Billingslea v. Smith*, 77 Md. 504, 521, 26 A. 1077, 1082, where one of the two co-plaintiffs died and the proceedings were continued in both names, that the use of both names was an irregularity but not fatal, because: "The use of the name of the dead man could confer no rights on any one, and could do no harm to any one. It was surplusage which ought not to have encumbered the proceedings."

In *Owings v. Owings*, 3 Gill & J. 1, 4, a decree of the Chancellor was passed in favor of the defendant. An appeal to this Court was prayed by the solicitor for the complainant, which was allowed, the record was brought up and there was an appearance for the defendant. A motion to dismiss was filed, which alleged that the appellant had died before the appeal was prayed. The

Court held, that the existing relevant statutes (now codified as Sections 81 and 83 of Article 5 of the Annotated Code of Maryland, 1951) did not apply to appeals brought in the name of a dead person. The heirs of the appellant entered the case after the time for appeal had expired. The Court held this to be of no significance and said that the appearance of counsel for the appellee in order to move to dismiss: "... could not have the effect, to render the mere sending up the record, and docketing the case in the name of one who was dead, a good and available appeal.

"It was not a mere irregularity, but a complete and radical defect." The appeal was dismissed.

*Goldschmid v. Meline,* 86 Md. 370, 371, 373, 38 A. 783, 784, decided, where a party plaintiff died after the rendition of a judgment for the defendant and before an appeal was taken, that his executor or administrator could not appeal from judgment, because the statute does not provide for an appeal in such case. The Court held: "By the rule of the common law, if the plaintiff in error dies before errors assigned, the death abates the writ; . . . and as, unless specially authorized by statute, an appeal will not lie where a writ of error would abate, . . ." The case was dismissed because there was no statute permitting the executor or administrator to prosecute an appeal of a plaintiff who died before the appeal had been entered. The Court concluded: "It is competent to the Legislature to supply this omission, but this Court has no authority to do so." See also *Harryman v. Harryman,* 49 Md. 67; and *Thomas v. Thomas,* 57 Md. 504.

After the decision in the *Goldschmid* case, the Legislature, in 1898, enacted what is now Section 85 of Article 5 of the Code (1951 Ed.), to provide that if any party plaintiff or defendant shall die either before or after judgment or decree, "... the heir, executor, administrator or other proper person may, if he thinks proper, suggest the death and become a party in the place of such deceased party, and pray an appeal or writ of

error, . . .; *provided such appeal or writ of error be prayed within the time prescribed in this article.*"

Not only has there been express legislative recognition that the death of a party should not extend the time within which an appeal must be taken, by whomever in such case may be authorized to take it, but this Court has so held in *Hopper v. Jones,* 64 Md. 578, 4 A. 273. We think that the principle applied in the cases to which we have referred, dealing with appeals to this Court after death of a party, applies equally to the appeals allowed from the Accident Commission to the trial courts. In both instances the right to appeal is conferred only by statute. The jurisdiction of the trial courts, acting as appellate courts, depends to as great a degree, if not greater, as that of this Court, on due compliance by one named or contemplated by the governing statute with its provisions. In *Holland Mfg. Co. v. Thomas,* 136 Md. 77, 110 A. 209, the appeal was taken thirty-one days after the order complained of. Despite this, the lower court reversed the order of the Commission. This Court decided that the language of what is now Section 57 of Article 101, requiring appeal within thirty days, was mandatory and positive, and held that the court had no jurisdiction, and that its judgment was a mere nullity and must be reversed. See also *Brenner v. Brenner,* 127 Md. 189, 96 A. 287; and *Miller v. Bethlehem Steel Co.,* 160 Md. 657, 154 A. 555. We assume for the purpose of this case, there being no necessity to decide it, that the widow or the administratrix of Isadore Switkes, or both, could have appealed if they had done so within thirty days of the order of the Accident Commission. *Cambridge Mfg. Co. v. Johnson,* 160 Md. 248, 153 A. 283; *Moller Motor Car Co. v. Unger,* 166 Md. 198, 170 A. 777; *Bramble v. Shields,* 146 Md. 494, 127 A. 44. They did not so appeal, and Switkes could not, even through the use of his name by his lawyers.

The appellant relies on *Bramble v. Shields, supra.* There, the appeal was taken from an order of the In-

dustrial Accident Commission in the name of William Shields, by his attorneys. A motion to dismiss was filed on the ground that Shields was insane at the time the appeal was taken. Thereafter, an amended petition was filed in the names of Shields and his wife, as wife and next friend. This Court refused to dismiss the appeal. There are two reasons, at least, why the case is not controlling. First, the ground of decision in this Court was that no exception was taken and no bill of exception was filed, so that the ruling of the Court was held to be not open to review. Second, in *Alexander v. Rose*, 181 Md. 447, 30 A. 2d 785, Judge Adams pointed out that an insane person, even though adjudicated, which Shields had not been, was not only a proper but a necessary party in suits for and against him, and under this rule, an insane person, rendered so by an accidental injury, would seem to be a "person aggrieved" under Section 57. Compare *Wainwright v. Wilkinson*, 62 Md. 146, where in a suit originally brought by her *prochein ami*, an infant employed an attorney and then asked him to dismiss the suit, which he did. This Court held that the motion to dismiss was a nullity because the infant was incapable of employing the attorney, and the employment being nugatory, the attorney was unauthorized and the dismissal was simply void. See *State v. Heath*, 18 N. J. Misc. 471, 15 A. 2d 92.

If it be considered that the lawyers were acting on their own, rather than acting for their deceased client, the position of the appellants would not be improved. Ordinarily, an attorney acting for himself cannot take an appeal from an order or judgment which affects the interest of his client. In *National Park Bank v. Lanahan*, 60 Md. 477, 515, the lawyer for an attaching creditor, who was challenging the deed of trust made for the benefit of creditors, filed a petition in his own name as "attorney and counsellor of the Circuit Court of the United States, for the Fourth District, in and for the Maryland District", in which he charged that by service of an injunction upon him, his client being a non- resi-

dent, an illegal attempt had been made to restrain him as an attorney of the United States Court, and through him, his client, from receiving their just rights. He suggested to the Court that since his client could not be made a party, and since his appearance and answer might submit him to the jurisdiction, the lawyer would file the motion himself to that effect. The injunction was granted and the lawyer appealed from the order granting an injunction against his client, and from the order dismissing his own motion. The Court dismissed that appeal and said: "An attorney has no right in his own name and on his own motion to appeal from an order or judgment of the court below affecting the interests of his client. The appeal, therefore, in this case by the appellant, who was merely the attorney for Anderson in the attachment proceedings, must be dismissed."

In *Bosley v. Dorsey*, 191 Md. 229, 60 A. 2d 691, 693, the People's Counsel appealed from an order of the Public Service Commission of Maryland. The statute which authorized appeals (Article 23, Section 415, of the Code, 1939) provided that "any person in interest being dissatisfied" could appeal. The Court had to determine, therefore, whether the People's Counsel was a "person in interest". It concluded that ordinarily an attorney is not a party to a suit in which he acts in a professional capacity in representing a litigant. The Court said: "It is generally accepted that an attorney retained to prosecute or defend an action has no implied authority to prosecute an appeal from a judgment or decree affecting the interests of his client. . . In this case the People's Counsel does not contend that he is injuriously affected by the order of the Commission. He claims that he has the right to appeal as an agent for the persons affected." The holding of the Court was that the People's Counsel was not a party in interest and, therefore, had no right to appeal. The Legislature has changed this but the principle here relevant is unaffected. It would seem to follow that the lawyers in

this case were not within the contemplation of Section 57, as persons aggrieved by a decision which affected their interests. *State v. Heath, supra.*

It is elementary that ordinarily the death of the principal revokes an agency and terminates the power of the agent to act. This rule includes the agency embodied in the relationship of client and attorney. *Poe, Pleading and Practice,* Tiff. Ed., Vol. 2, Sec. 11, says succinctly: "And so, too, it is settled that the death of the client terminates the authority of the attorney." *Estate of Young,* 3 Md. Ch. 461 [Reprint page 349]; *Restatement of Agency,* Sec. 120; *Mechem on Agency,* 2d Ed., Sec. 2314; *McCormick v. Shaughnessy,* 19 Idaho 465, 114 P. 22, 34 L. R. A., N. S., 1188; *Owings v. Owings, supra;* and *In re Cahoon's Will* (Del. 1951) 82 A. 2d 920.

If it be argued that this general rule is not applicable where the authority of the agent is coupled with an interest, the short answer is that this is not such a case. In *Karr, Hammond & Darnall v. Shirk,* 142 Md. 118, 120 A. 248, a mortgagor appealed from the ratification of a foreclosure sale. The trustee, on order of Court, employed lawyers to represent him, ". . . in defending the sale referred to in the Court of Appeals. . ." They did so successfully, and then, on petition, were allowed a fee for their services. The mortgagor excepted to the auditors account allowing the fee, the lower court sustained the exception, and the lawyers appealed. The Court held that they were not original parties and did not become so by intervening. It held further that the appellants had no direct interest in the subject matter of the litigation and so, no right to appeal. The fact they were attorneys for the trustee gave them no standing as appellants.

Certainly, if, in the *Karr* case, the client principal had died, the lawyer-agents could not have successfully maintained that they had an interest which survived his death and were thus authorized to continue to litigate. For a power to be irrevocable because coupled with an interest, the interest must be in the subject matter of

the power—substantially an estate in it—and not merely in the proceeds, benefits or gains which will arise or flow from the exercise of the power. *Mechem,* work cited, Sec. 570; and *Bowman v. Ledbetter,* 1935, 173 Okla. 345, 48 Pac. 2d 334. The authority of the lawyers in this case was not continued after the death of their client merely because, if the litigation had been successful on appeal, they would have earned a fee.

That their interest in a potential fee does not authorize an appeal seems to be demonstrated by the Workmen's Compensation Article. The general right of appeal is given, as we have seen, by Section 57 of that Article. Section 58 provides that no person shall charge or collect any compensation for legal services in connection with any claim under the Workmen's Compensation Article unless it is approved by the Commission; when so approved, it shall ". . . become a lien upon the compensation awarded . . ." and shall be paid from that compensation only as the Commission directs. The Commission is given power on the application of "any party in interest" to hear and determine all questions concerning fees and may order any lawyer to refund any portion of any charge for legal services. The Section concludes: "Orders of the Commission regulating payments and refunds for legal services may be enforced in the courts of this State, or may be appealed from in like manner as awards for compensation under this Article". It is evident that the right of a lawyer to litigate, or appeal from the lower court decision, concerning a fee, arises by virtue of this Section, and is limited to the right to the fee and its size, and to the obligation to refund. Put differently, the Section says that a lawyer is a party in interest only when he has been granted or denied a fee, and in almost every instance, this is only after compensation has been awarded. If a lawyer had been deemed by the Legislature to be a party aggrieved whose interest was affected, under Section 57, it would not have been necessary or appropriate to give a specific right of appeal

as to fees in Section 58. *Cranston v. Industrial Commission,* 246 Wis. 287, 16 N. W. 2d 865.

The order of the Court which substituted the widow of Isadore Switkes as an appellant, as widow and as administratrix, conferred no rights upon her in either capacity, since it came too late and was passed after the motion to dismiss had been filed. It could not be considered a ratification of the appeal which had been taken earlier, because there was nothing to ratify, that appeal having been a nullity. As the Court said in *Owings v. Owings, supra,* "But there was no appeal properly made, or depending here, and the mere appearance of the heirs . . . does not stand in the way of the motion to dismiss; their appearance being without authority, and the case standing, as if no such appearance had been entered." The pending appeal has some similarity to the case of *In re Cahoon's Will* (Del. 1951), *supra.* A lawyer, who was on a contingent fee basis, had been directed to take an appeal in a will contest. His client died and he filed the appeal in the name of the deceased, by him as attorney. Letters testamentary were granted after the time for appeal had passed. The appeal was dismissed. The Court said at page 921, of 82 A. 2d: ". . . I think the appeal from the Register of Wills to this Court, . . . after her death, as to her, is a nullity. The death . . . completely severed the pre-existing relationship of attorney and client." The Court then continue: "There can be no substitution of parties appellant in the present case, since there was no legally existing appellant at the time the appeal was filed, or at any subsequent time thereafter for whom the executrix . . . can now be substituted."

We find that no appeal from the Accident Commission was taken in this case within the time prescribed by law, the attempt to do so by the lawyers having been of no effect.

*Judgment affirmed, with costs.*