780 A.2d 1137

COUNTY COUNCIL OF PRINCE GEORGE'S COUNTY,
Maryland, Sitting as the District Council,

v.

Bob DUTCHER.

No. 68, Sept. Term, 2000.

Court of Appeals of Maryland.

Argued Feb. 1, 2001.

Reargued June 4, 2001.

Decided Sept. 11, 2001.

Steven M. Gilbert, Upper Marlboro, for petitioner.

Paul B. Rodbell (Meyers, Rodbell & Rosenbaum, P.A., on brief), Riverdale, for respondent.

Douglas C. Meister (Meyers, Rodbell & Rosenbaum, P.A.), Riverdale, for respondent.

Adrian Robert Gardner, General Counsel, M. Andree Green, Associate General Counsel, amicus curiae brief for the Maryland–National Capital Park and Planning Commission filed on behalf of appellee, amicus curiae.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

Reargued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

Following conditional approval by the Prince George's County Planning Board ("Planning Board") of the Maryland–National Capital Park and Planning Commission ("MNCPPC" or "Commission") of a preliminary plan of subdivision, including a traffic facilities mitigation plan, submitted by Respondent, Bob Dutcher, a nearby citizens' association filed an administrative appeal of the Planning Board's decision to the Prince George's County Council ("County Council"), sitting as the District Council ("District Council").[1] Such an appeal was authorized ostensibly by a section of the Prince George's County Code ("PGCC") (1999 ed.), enacted by the Prince George's County Council.[2] On 11 February 1998, the District Council issued its Notice of Final Decision in the administrative appeal, rejecting the Planning Board's findings of fact and reversing the Planning Board's decision.

Respondent sought judicial review by the Circuit Court for Prince George's County. On 9 June 1999, the Circuit Court entered judgment in Respondent's favor reversing the decision of the District Council, holding, among other things, that: (1) the District Council failed to give deference to the factual

---

1. We refer to the District Council and County Council as separate entities, although they are comprised of the same group of elected local governmental officials. The different names discriminate between the exercise of different governmental functions. The District Council makes discrete land use decisions, and the County Council performs the general legislative functions of the legislative branch of the Prince George's County government.

2. PGCC § 24–124(a)(6)(D) of the County Subdivision Regulations provides that "Planning Board action on ... [traffic facilities] mitigation ... may be appealed to the District Council by the applicant or by any party of record." Subtitle 24 of the PGCC contains the Subdivision Regulations, while Subtitle 27 sets forth the Zoning Ordinance.

findings of the Planning Board, a requirement identified by the Court of Special Appeals in *County Council of Prince George's County v. Curtis Regency Service Corp.*, 121 Md.App. 123, 133–34, 708 A.2d 1058, 1062–63, *cert. denied,* 351 Md. 5, 715 A.2d 964 (1998); and, (2) the facts of record did not support the District Council's conclusions.

The District Council's then attorney, without specific consultation with her client, filed an appeal to the Court of Special Appeals on 7 July 1999. Four days after the expiration of the applicable 30 day appeal period provided by Maryland Code (1957, 1997 Repl.Vol.), Art. 28, § 8–106(j) and Maryland Rule 8–202,[3] on 13 July 1999, the District Council met formally and voted to pursue the appeal filed by its attorney. On 5 June 2000, the Court of Special Appeals dismissed the appeal, finding as fatal the absence during the 30 day appeal period of a discrete District Council authorization to take the appeal. *County Council of Prince George's County v. Dutcher,* 132 Md.App. 413, 752 A.2d 1199 (2000).

The District Council filed a petition for writ of certiorari with this Court. We granted *certiorari* on 11 September 2000. *Prince George's County v. Dutcher,* 360 Md. 485, 759 A.2d 230 (2000). The following questions were presented in the District Council's successful petition:

A. Was the District Council's attorney authorized to file the appeal from the judgment in the Circuit Court if, by consistent and long-standing practice approved by the Dis-

---

3. Art. 28, § 8–106(j) reads as follows:

(j) *Further right of appeal.*-In Prince George's County, the District Council, the applicant, or any party to the circuit court review who is an aggrieved party may secure a review of any final judgment of the Prince George's County Circuit Court under this title by appeal to the Court of Special Appeals. The appeal shall be taken in the manner provided by law for appeals from law courts in other civil cases. Each member of the district council in Prince George's County is entitled to vote on whether the district council shall appeal to the Court of Special Appeals, regardless of whether the member participated in the hearing on the matter or in the decision.

Rule 8–202 provides that "[t]he notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken."

trict Council, the Council's attorney has filed appeals from all adverse trial court judgments, subject to approval by the Council at a later date, whenever the Council is not able to meet to approve the appeal before it is filed?

B. Should the lower court have approved the Circuit Court's disposition of the appeal, where the Circuit Court itself reviewed the evidence before the Planning Board instead of remanding the case to the District Council for that purpose?

After briefing and oral argument on these questions, we issued an Order on 8 March 2001, concluding that the Court of Special Appeals should not have dismissed the appeal in this case. We also concluded that the merits of the remaining question presented by the reinstated appeal, as well as a jurisdictional issue noticed by the Court,[4] could not be resolved properly on the basis of the briefs and arguments mounted by the parties to that point. The case was set for rebriefing and reargument in May 2001. The parties were directed to brief and argue the following three additional issues formulated by the Court:

1. Whether the Court of Special Appeals in *County Council of Prince George's County v. Curtis Regency Service Corp.*, 121 Md.App. 123, 708 A.2d 1058, *cert. denied*, 351 Md. 5, 715 A.2d 964 (1998), correctly interpreted the last clause of Maryland Code (1957, 1997 Repl.Vol.), Art. 28, § 7–117, which provides that, in Prince George's County, the "subdivision regulations ... may include provisions for an appeal to the district council from a decision approving or disapproving a subdivision plat."

---

**4.** Lack of subject matter jurisdiction may be raised at any time, including initially on appeal. Additionally, the issue of subject matter jurisdiction need not be raised by a party, but may be raised by a court *sua sponte*. *Derry v. State*, 358 Md. 325, 334, 748 A.2d 478, 482 (2000) (citation omitted); *See also Duffy v. Conaway*, 295 Md. 242, 254 n. 8, 455 A.2d 955, 961 n. 8 (1983) (reiterating that subject matter "[j]urisdiction is a matter which, if noticed, will be addressed by a court even though it was not raised by any of the parties." (citations omitted)).

2. Whether §§ 24–124(a)(6)(D), 24–137(j), and 27–132(f) of
the Prince George's County Code (1999 ed.) constitute sub-
division regulations adopted pursuant to the authority
granted by the last clause of Art. 28, § 7–117, of the
Maryland Code, and if so, how should such regulations be
interpreted and are such regulations valid under Art. 28,
§ 7–117?

3. When, in Prince George's County, an appeal is taken to
the District Council from a decision of the Commission,
pursuant to Art. 28, § 7–117, of the Maryland Code, approv-
ing or disapproving a subdivision plat, what is the appropri-
ate standard of review by the District Council?

## I.

On 21 May 1996, Respondent filed with the MNCPPC an
application for a preliminary plan of subdivision for 8.83 acres
of undeveloped property in Clinton, Maryland.[5] Respondent
proposed twenty lots for single family, detached homes. The
main road intersection to be affected by traffic projected to be
generated by the proposed development was Surratts Road
and Branch Avenue ("the critical intersection").

### A. Administrative Proceedings

A concern expressed by the MNCPPC staff reviewing the
proposed preliminary subdivision plan was its projected effect
on the critical intersection. Pursuant to PGCC § 24–124,
Respondent was required, in order to obtain approval, to
satisfy the Planning Board that the "traffic generated by the
proposed subdivision will be accommodated on major intersec-
tions and major roadways ... such that they will be function-
ing below the minimum peak-hours service levels adopted by

---

**5.** Respondent's application for approval of a preliminary plan of subdi-
vision was filed under PGCC § 24–119. (procedures for major subdivi-
sions). In contrast, applications for approval of preliminary plans of
cluster subdivision are governed by PGCC § 24–137 (cluster subdivi-
sion). The application procedures for major, cluster, Comprehensive
Design Zone, and optional residential design approach subdivision
proposals are similar.

the Planning Board." PGCC § 24–124(a)(1) & (2). Levels of service are identified by alphabetical reference as A, B, C, D, E, and F (A being the optimum and F the worst), with levels of service A through D considered adequate. According to the MNCPPC staff, the critical intersection, using existing traffic and that calculated to be generated by previously approved, but undeveloped, subdivisions in the area of the critical intersection, would operate at an acceptable D level of service.[6] After adding the anticipated traffic from Respondent's proposed subdivision, however, the level of service at the critical intersection was calculated by staff to fall below the D level, reaching an unacceptable E level of service during the morning and afternoon peak hours.[7]

At a 31 October 1996 hearing before the Planning Board on Respondent's application, a Traffic Facilities Mitigation Plan ("TFMP") was discussed.[8] Under the proposed TFMP, osten-

---

6. In accordance with Guidelines for the Analysis of the Traffic Impact of Development Proposals adopted by the Planning Board, D level of service is the lowest acceptable peak hour operating condition for signalized intersections with critical lane volumes of less than 1450 vehicles per hour.

7. Respondent's subdivision was found to add a total of twelve vehicle trips in the morning peak hour and thirteen vehicle trips in the evening peak hour.

8. Mitigation is a technique allowed in the subdivision process in Prince George's County by which proposed land developments in certain areas of the County are allowed to provide roadway improvements (or contribute to funding for transportation improvements) which would improve traffic operations at nearby intersections. PGCC § 24–124(a)(6) provides that consideration of certain mitigating actions is appropriate as defined in the approved Guidelines for Mitigation Actions ("Guidelines"). The Guidelines provide procedures for mitigating traffic impact at intersections in certain areas of the County, and they provide special procedures for developments generating fewer than 25 trips in any peak hour. Under PGCC § 24–124(a)(6)(c), the proposed subdivision must meet certain criteria before mitigation may be considered: (1) the existing traffic levels of service at the critical intersection must meet level D standards during the morning and afternoon peak hours; (2) total traffic levels of service at the critical intersection must not be greater than 10% above the acceptable peak-hour service level; and (3) the proposed subdivision must generate less than twenty-five peak hour trips. If the above criteria are satisfied, the preliminary plan of

sibly to guarantee acceptable peak hour service levels, Respondent agreed to pay a computed pro rata share, amounting to $23,333, for future physical improvements to the critical intersection that, when made, would allow it to operate at an acceptable level of service. The Planning Board issued its conditional approval of the preliminary plan of subdivision and TFMP on 5 December 1996. Pursuant to PGCC § 24-124(a)(6)(D), a nearby citizens' association appealed the Planning Board's decision to the District Council.[9]

On 11 February 1998, the District Council issued its Notice of Final Decision in which it reversed the Planning Board's decision and denied the TFMP. In reaching this conclusion, the District Council, relying on the same evidentiary record as was before the Planning Board and hearing only oral argument from the parties, rejected the Planning Board's findings of fact and made its own finding that the TFMP was inadequate.[10]

### B. Trial Court Proceedings

Pursuant to Md.Code (1957, 1997 Repl.Vol.), Art. 28, § 8-106(e), Respondent sought judicial review of the decision of the District Council to the Circuit Court for Prince George's

---

subdivision may be approved based on a TFMP. Thus, a TFMP is a part of the application for approval of a preliminary plan of subdivision.

9. As noted earlier at Page 1, n. 2, PGCC § 24-124(a)(6)(D) provides that the "Planning Board action on [traffic facilities] mitigation may be appealed to the District Council by the applicant or by any party of record." Administrative appeals of Planning Board actions regarding subdivision matters are provided for by ordinance in the Prince George's County Subdivision Regulations in cluster preliminary subdivision and TFMP actions, but not with regard to any other subdivision actions taken by the Planning Board.

10. The District Council disregarded the factual conclusions of the Planning Board and made its own finding of fact that the critical intersection was operating at an F level of service without the introduction of the traffic projected from Respondent's proposed development. This finding was the basis for the District Council's denial of the TFMP. In contrast, the Planning Board, as noted *supra*, had found that the critical intersection was operating at a D level of service based on the same evidence.

County. On 9 June 1999, the Circuit Court finally determined that the District Council's position, i.e. that it exercised original jurisdiction in such administrative appeals and therefore could substitute its judgment for that of the Planning Board, was legally erroneous and therefore, the District Council had applied the wrong standard of review. The Circuit Court, relying on *Curtis Regency,* concluded that the District Council properly sat as an appellate body in reviewing the Planning Board's approval of Respondent's TFMP. *Curtis Regency,* 121 Md.App. at 137, 708 A.2d at 1065. Reversing the District Council's decision, the Circuit Court remanded the case back to the District Council for further proceedings not inconsistent with its order.[11]

## C. Appeal Proceedings

On 7 July 1999, the District Council's attorney filed an appeal to the Court of Special Appeals. On 13 July 1999, four days after the expiration of the 30 day appeal period, the District Council, met and for the first time, formally considered the Circuit Court's action, voting to pursue the appeal filed by its attorney. Respondent argued that the District Council's attorney lacked authority to file the appeal when taken and that the District Council's after-the-fact ratification of the appeal was untimely. The Court of Special Appeals concluded that "[t]he tradition of allowing ... [the District Council's attorney], in conjunction with the Council Administrator, to file appeals is not an effective delegation of the District Council's right to decide whether to appeal." *Dutcher,* 132 Md.App. at 424, 752 A.2d at 1205. The appeal, judged to be unauthorized because District Council approval was too

---

11. It is not entirely clear whether the Circuit Court intended the remand to be no more than a rote exercise for the District Council to approve the Planning Board's action or for the District Council to apply the *Curtis Regency* deferential standard of review to the Planning Board's fact finding. The ambiguity arises from the portions of the Circuit Court's Memorandum, Opinion, and Order wherein it reviewed the District Council's findings, vis á vis the record evidence, and concluded some findings to be wholly unsupported, some merely conclusory, and, in one instance, the contrary position of the Planning Board to be "not clearly erroneous and [ ] supported by evidence."

late, was dismissed as untimely. *Dutcher,* 132 Md.App. at 431, 752 A.2d at 1208.

## II.

As announced in our 8 March 2001 Order, we conclude that the appeal to the Court of Special Appeals was authorized and timely. We do not reach the District Council's second question presented in its petition for *certiorari,* in view of our disposition of the second supplementary question contained in our 8 March 2001 Order.

 Regarding the supplementary questions, we hold that, under the statutory scheme established by the Regional District Act ("RDA") [12] for the regulation of subdivisions in Prince George's County, the District Council has no authority and, therefore, no jurisdiction, for immediate review of Planning Board actions on preliminary plans of subdivision containing a TFMP. Applying the administrative appeal provisions of PGCC § 24–124(a)(6)(D), pertaining to traffic mitigation techniques, and necessarily also PGCC § 24–137(j), pertaining to cluster subdivisions, to Planning Board actions on preliminary

---

12. Chapter 714 of the Laws of 1939 created the Maryland Washington Regional District under the jurisdiction of the MNCPCC. In 1943, the General Assembly by Chapter 992 repealed Chapter 714 and re-enacted it "[w]ith amendments as a bi-county act applicable to the Maryland Washington Regional District in Montgomery and Prince George's Counties and not as a public local law of either county. . . ." *See Prince George's County v. Maryland–National Capital Park and Planning Commission,* 269 Md. 202, 206, 306 A.2d 223, 226 (1973). Likewise, in 1943, the General Assembly indicated its intent to clarify the status of the law pertaining to the Metropolitan District by enacting Chapter 1008 "[a]s a single bi-county Act ... and not as a public local law or laws of either county." *Id.* In 1959, the General Assembly consolidated all the pre-existing provisions relating to land use regulation in the affected portions of Montgomery and Prince George's counties, as well as the MNCPCC, by enacting Chapter 780 of the Laws of Maryland. *Id.* As to the MNCPPC particularly, it repealed certain sections of the Codes of Montgomery and Prince George's counties, repealed all earlier Chapters and enacted in lieu thereof a new subtitle "Park and Planning Commission." The law basically continued the MNCPCC, expanded the areas under its jurisdiction, and redesignated its functions under the subheadings "Metropolitan District" and "Regional District." It is § 7–117 of the RDA which is principally in controversy here.

plans of subdivision is unauthorized by RDA, Art. 28, § 7–117.[13] Although the County Council, acting in its legislative capacity, may choose to authorize an appeal of Planning Board action on a final subdivision plat to the District Council, as permitted by RDA, Art. 28, § 7–117, such an appeal procedure has not been included by the County Council in the Subdivision Regulations of the PGCC. We need not decide the first and third supplementary questions because the lack of a jurisdictional basis for immediate District Council review of Planning Board actions on preliminary plans of subdivision renders their consideration moot.[14]

## A. Timeliness of the Appeal

The District Council's then attorney filed with the Circuit Court a timely protective notice of appeal [15] on behalf

---

13. PGCC § 27–132(f), referred to in Supplementary Question # 2, *supra* p. 406, is not a subdivision regulation under PGCC subtitle 24, but rather a zoning regulation under PGCC subtitle 27. As such, we do not review PGCC § 27–132(f) here, but do note that it is confusing and internally inconsistent as regards the nature of the jurisdiction the District Council purports to exercise in matters addressed by the section. The conflicting provisions read as follows:

PGCC § 27–132(f)(1) In deciding an appeal to the District Council, or Council election to review a decision made by the Zoning Hearing Examiner or the Planning Board, the Council shall exercise *original jurisdiction.*

PGCC § 27–132(f)(2) For any appeal or review of a decision made by the Zoning Hearing Examiner or the Planning Board, the Council may, *based on the record,* approve with conditions, remand, or deny the application. (Emphasis added).

14. We do not decide here whether the District Council would exercise original or appellate jurisdiction were the County Council to enact an ordinance permitting it to review final plat actions taken by the Planning Board. Because the District Council has no jurisdiction to hear appeals of preliminary plan actions, we do not consider the holding of *Curtis Regency,* which involved a preliminary plan of subdivision, on point regarding the open issue of what the District Council's standard of review might be regarding final plats. *E.g., Curtis Regency,* 121 Md.App. at 137, 708 A.2d at 1065 (holding that the District Council exercised only appellate jurisdiction and "[m]ay not substitute its judgement for that of the [Planning Board], even if it, had it been so empowered, might have made a diametrically different decision. The circumstances under which it may overturn or countermand a decision of the [Planning Board] are narrowly constrained. It may never simply second guess." (citation omitted)).

of her client in accordance with her professional obligation and a long-standing agency administrative policy to protect the client's right to appeal. The District Council's subsequent ratification of the appeal, as required by Art. 28, § 8–106(j), four days after the expiration of the statutory 30 day appeal period, does not defeat the timeliness of the filed appeal.

The District Council has a long-standing policy whereby its attorney is authorized and directed to file a protective notice of appeal whenever the District Council, for any reason, is unable to vote on an appeal during the prescribed statutory period for taking an appeal.[16] The District Council thereafter acts, in the normal course of business, to ratify, or direct dismissal, of the appeal. There is no dispute that the District Council and its attorney followed the established policy in this case. The final order in the Circuit Court was entered on 9

---

**15.** A notice of appeal contains a short statement noting an appeal to the Court of Special Appeals. *See* Md. Rules Appendix of Forms, Form 22. It works to inform "the prevailing party that the unsuccessful party is seeking review of the judgment," and need not "specify the order or judgment appealed from." *B & K Rentals v. Universal Leaf*, 319 Md. 127, 133, 137, 571 A.2d 1213, 1216, 1218 (1990), *remanded to* 84 Md.App. 103, 578 A.2d 274 (1990), *rev'd on other grounds*, 324 Md. 147, 596 A.2d 640 (1991). A "protective" notice of appeal does not differ in form or effect from a "notice of appeal." The only difference, if any, would be the intent of the individual filing such an appeal. As evidenced in this case, a notice of appeal may be filed in order to protect the timeliness of an appellant's (or cross-appellant's) right to appeal.

**16.** The policy, as outlined in the affidavits of Council Administrator, David L. Goode, and District Council attorney, Joyce B. Nichols, Esquire, provided:

By prior practice in administrative cases, from about 1982 to the present, the District Council's standing authorization and instructions to its attorneys have been as follows: First, the attorney is authorized and directed to appear in every case appealing or challenging a District Council decision; second, the attorney is required to defend all actions of the Council, including all findings, orders, and conditions; third, the attorney is authorized and required to preserve all District Council rights in litigation, unless the Council approves a dismissal, compromise, or waiver of rights; and fourth, the Council is to be advised by the attorney of the course of litigation and the need for a decision, whenever required.

*Dutcher*, 132 Md.App. at 423, 752 A.2d at 1204.

June 1999. On 7 July 1999, the District Council's attorney filed a protective notice of appeal. The matter was set, in the normal course of business, for District Council review on 13 July 1999, at which time the District Council voted unanimously to maintain and pursue the appeal.

In a governmental attorney-client relationship particularly, it is not uncommon to find an established policy giving the government attorney standing instructions and authority to take all actions necessary to protect the government client's appellate interests until such time as the client may adequately consider the matter. *See, e.g.,* United States Attorney's Manual § 2–2.132 (July 28, 1999) (noting Department of Justice policy that "[i]f the time for appeal or cross-appeal is about to expire . . . a "protective" notice of appeal should be filed in order to preserve the government's right to appeal."). *See also Hogg v. United States,* 428 F.2d 274, 278–80 (6th Cir.1970) (holding a United States attorney has the authority to file a protective notice of appeal when the time to appeal is about to expire, even if the Solicitor General has not yet authorized the appeal), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *United States v. One 1987 Mercedes Benz Roadster,* 2 F.3d 241, 242 (7th Cir.1993) (explaining the United States voluntarily dismissed a protective appeal because "[a]fter the notice of appeal was filed, the Solicitor General declined to authorize [it]"). In an on-going attorney-client relationship, particularly such as exists here between the governmental client and its house counsel, and especially in view of the long-standing policy declaration in this case, the client rightfully may expect that the attorney will act to protect the client's right to appeal.

■ The appellate court, upon its own motion or even that of opposing counsel, will not inquire ordinarily into the authority of the attorney to file the appeal or, in the case of a governmental appellant, the procedure by which appellant subsequently ratifies, or dismisses, the actions taken by its attorney on its behalf. *See Hogg,* 428 F.2d at 280 ("[Appellee] has no more right to question the process by which a decision

was made to file the Government's notice of appeal than the United States could question the procedure by which a private practitioner and his client reach a decision to file a notice of appeal."). An exception to the rule would be where the appellant-client complains that the appeal was unauthorized. Because a timely notice of appeal was filed by the District Council's attorney, and the District Council has made no complaint, it is beyond the legitimate purview of this, or any appellate court, to dismiss the appeal.

Respondent's principal contention is that the procedure in place in the present case represented an unauthorized delegation of the decision whether to appeal. This argument is based on the asserted applicability of *Commission on Human Relations v. Anne Arundel County*, 106 Md.App. 221, 664 A.2d 400 (1995), to the case *sub judice*. In *Anne Arundel*, the Court of Special Appeals held that the Executive Director and General Counsel of the Maryland Commission on Human Relations ("HRC"), acting alone, and without apparent or express authority, had no ability to seek judicial review of a HRC appeal board action because "[u]nder § 10–222 of the APA [17] ... the appeal must be approved by the appropriate individual or group of individuals comprising the agency, within whom is reposed the ultimate legal authority to pursue such review." *Anne Arundel*, 106 Md.App. at 241, 664 A.2d at 410. The Court of Special Appeals relied on *Anne Arundel* in the present case to conclude that:

> The long-standing practice, described in the present case, of having the Principal Counsel and Council Administrator make the decision to file an appeal to protect the interests of the District Council, is not meaningfully different from the long-standing practice of the Commission on Human Relations proffered to and rejected by us in *Anne Arundel.* We only reiterate the conclusion reached in *Anne Arundel,*

---

17. The HRC was, and is, a unit of State government regulated by the State Administrative Procedure Act (APA). Md.Code (1984, 1993 Repl. Vol., 1994 Cum.Supp.), § 10–222 of the State Gov't Art., Subtitle 2. As such, § 10–222 of the APA governed all actions for judicial review of administrative agency decisions filed on or after 1 June 1993.

as we conclude that the tradition of allowing Principal Counsel, in conjunction with the Council Administrator, to file appeals is not an effective delegation of the District Council's right to decide whether to appeal.

*Dutcher,* 132 Md.App. at 424, 752 A.2d at 1204–1205.

At the time of the occurrence of the relevant events in *Anne Arundel,* the final administrative decision in a contested case before the HRC was made by an appeals board composed of some, but not all, of the HRC commissioners. *Anne Arundel,* 106 Md.App. at 231, 664 A.2d at 405. Dissatisfied with the appeals board's decision in that particular case, the Executive Director and the General Counsel of the HRC collaborated in filing a petition for judicial review in the name of the HRC in the circuit court. *Anne Arundel,* 106 Md.App. at 232, 664 A.2d at 405–06. As justification for initiating the petition for judicial review "[t]he Commission's appellate counsel proffered [to the Court of Special Appeals] that, at some unspecified time in the past, the Commissioners had delegated to the Executive Director and the General Counsel *the authority to determine whether to take an appeal* of an [HRC] appeal board's action." *Anne Arundel,* 106 Md.App. at 240, 664 A.2d at 410 (emphasis added) (footnote omitted).

The intermediate appellate court in *Anne Arundel* found these arguments wanting, concluding that the agency, as defined by APA § 10–201(b), was the entity granted the right by statute to seek judicial review and that, in this case, meant the 9 members of the HRC itself. *Anne Arundel,* 106 Md. App. at 241, 664 A.2d at 410. There was no clear indication that the HRC elected to seek judicial review of its appeals board's decision or ratified the staff filing of the petition. Accordingly, the purported delegation to the Executive Director and General Counsel was inefficacious.

As we recently reiterated in *Kant v. Montgomery County,* 365 Md. 269, 778 A.2d 384 (2001):

[A] circuit court action reviewing the adjudicatory decision of an administrative agency or local legislative body is not an "appeal." Instead, it is an original action for judicial

review. [ ] [This] "refers to an original circuit court action, authorized by statute, judicially reviewing an adjudicatory decision of an administrative agency or an adjudicatory decision of a local legislative body when it acts in a quasi-judicial capacity."

(365 Md. at 274, 778 A.2d at 387; citations omitted). The subject matter of *Anne Arundel* was the initiation of an original action in the Circuit Court which the relevant statute only authorized to be taken by the agency itself. The present case, involving the invocation of the appellate jurisdiction of the Court of Special Appeals, in order to protect the client's right to obtain appellate review at all, is fundamentally different. Moreover, the record in the present case, unlike that in *Anne Arundel*, reflects a clear and long-standing administrative policy that authorized the ministerial act of filing a protective notice of appeal and also required the agency's ultimate action.

### B. RDA, Art. 28, § 7–117

■■■ As is customary in statutory construction cases, we begin by reminding ourselves of the pertinent rules of interpretation. The rules are well settled. The goal with which we approach the interpretation of a statute or ordinance is to determine the intention of the Legislature enacting it. *Mayor and City Council of Baltimore v. Chase*, 360 Md. 121, 128, 756 A.2d 987, 991 (2000). In *Chesapeake and Potomac Telephone Co. of Md. v. Director of Finance*, 343 Md. 567, 578–79, 683 A.2d 512, 517–18 (1996) (citations omitted), we said:

Of course, the cardinal rule is to ascertain and effectuate legislative intent. To this end, we begin our inquiry with the words of the statute and, ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our enquiry there also. Where the statutory language is plain and unambiguous, a court may neither add nor delete language so as to "reflect an intent not evidenced in that language," *Condon v. State*, 332 Md. 481, 491, 632 A.2d 753, 755 (1993), nor may it construe the statute with " 'forced or subtle interpretations'

that limit or extend its application." *Id.* (citation omitted). Moreover, whenever possible, a statute should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory."

Application of these rules to § 7–117 produces a clear and logical result.[18] We begin by noting that, under the RDA, action on a subdivision plat is not synonymous with action on a preliminary plan of subdivision. In this regard, it is not ambiguous. The RDA expressly states that the County Council may enact legislation enabling the District Council to hear appeals of a "decision approving or disapproving a subdivision

---

18. Art. 28, § 7–117 of the RDA reads as follows:

§ 7–117. Approval or disapproval of subdivision plats; Prince George's County preliminary subdivision plans.

The Commission shall approve or disapprove a subdivision plat within 30 days after its submission. Otherwise the plat shall be deemed to have been approved, and a certificate to that effect shall be issued by the Commission upon demand. In Prince George's County, each office to which a preliminary subdivision plan is referred shall return one copy of the plan to the planning board within 30 days with comments noted on it. If the reply is not made within 30 days by any office to whom referred, the plan shall be deemed to be approved by it. In Prince George's County, the Commission shall approve or disapprove a preliminary subdivision plan within 70 days after its submission, excluding the month of August and the period between December 20 and January 3 when calculating this 70-day period. Otherwise, the preliminary subdivision plan shall be deemed to have been approved, and a certificate to that effect shall by issued by the Commission upon demand. The applicant for the Commission's approval may waive either or both of these requirements and consent to the extension of the periods. However, in Prince George's County, no such waiver may be for a period greater than the original period allowed for approval of the plat or preliminary plan. The ground of disapproval of any plat shall be stated upon the records of the Commission. Any plat submitted to the Commission shall contain the name and address of a person to whom notice of hearing may by sent. No plat may be sent by mail to the address not less than five days before the date fixed therefor. In his application, however, the applicant may waive the hearing and notice, and the approval of any plat exactly as submitted by the applicant is a waiver of the hearing and notice. The subdivision regulations may include provisions for notice to owners of properties that would be substantially affected by approval of any subdivision plat and for public hearings on the applications and may include provisions for an appeal to the district council from a decision approving or disapproving a subdivision plat.

plat." Art. 28, § 7–117. The distinction between a preliminary plan of subdivision and a subdivision plat, however, is also clear within § 7–117.

A close reading of § 7–117 highlights the careful distinction that the General Assembly intended between preliminary plans and final plats of subdivision. Section 7–117 of the RDA reads, *inter alia,* as follows:

> The Commission shall approve or disapprove a *subdivision plat* within 30 days after its submission ... In Prince George's County, the Commission shall approve or disapprove a *preliminary subdivision plan* within 70 days....

Art. 28, § 7–117 (emphasis added). The different deadlines demonstrate that the General Assembly recognized two separate and distinct administrative processes and actions. *Chase,* 360 Md. at 126–27, 756 A.2d at 990 ("[T]he Legislature knows how to differentiate ... and has done so clearly whenever that is what it intended.").

Different timetables are envisaged for the two administrative processes and actions, as well as for the waiver of the deadlines. The waiver provision in § 7–117 says:

> The applicant for the Commission's approval may waive either or both of these requirements [the 30–day deadline for approval or disapproval of a subdivision plat or the 70–day deadline for approval or disapproval of a preliminary subdivision plan] and consent to the extension of the periods. However, in Prince George's County, no such waiver may be for a period greater than the original period [30 or 70 days, respectively] allowed for approval of the *plat or preliminary plan.*

Art. 28, § 7–117 (emphasis added). Moreover, the General Assembly's intent to recognize a distinction between the two types of administrative action is shown by the use of the disjunctive "or" between plat and preliminary plan within § 7–117. Finally, the title of § 7–117 implies a distinction between the two administrative actions. It reads: "§ 7–117. Approval or disapproval of subdivision plats; Prince George's County preliminary subdivision plans." Art. 28, § 7–117.

Petitioner contends that it makes no "good sense" to say that the term "plat" means final plat, but not preliminary plan. Petitioner's Suppl. Reply Br. at 7. Petitioner believes that the only possible, meaningful interpretation is that "plat" means both preliminary plat (or plan) and final plat. The plain meaning of the language of the statute, however, does not support Petitioner's position. Imposing Petitioner's approach to make "plat" mean "preliminary plan" and "preliminary plan" to mean "plat," renders meaningless the obvious distinctions fashioned by the General Assembly. The first eight sentences of § 7–117 establish a dichotomy between, on the one hand, plats that are final, and on the other, plans that are preliminary. Consistent with that, the remaining five sentences of the statute refer to plat or subdivision plat. Petitioner isolates these last five sentences from their contextual antecedents to support its argument that it is not clear as to what the word "plat" refers. These sentences are unambiguous, however, when read in the entirety of § 7–117. The careful distinctions made in the statute demonstrate that the General Assembly did not intend to use the terms "plat" and "preliminary plan of subdivision" interchangeably or as synonyms.

The last sentence of § 7–117 authorizes an administrative appeal provision in subdivision regulations to "[i]nclude provisions for an appeal to the district council from a decision approving or disapproving a subdivision plat...." Art. 28, § 7–117. Our preceding analysis makes clear the intent of the General Assembly, in the last sentence of § 7–117, only to authorize the adoption of local legislation by the County Council permitting administrative appeals to the District Council from Planning Board actions on final subdivision plats. The plain meaning of the RDA confers no authority on the County Council to implement a process for an administrative appeal pertaining to Planning Board actions on preliminary subdivision plans, whether including a TFMP or as a cluster subdivision proposal.

## C. Legislative History

Petitioner continues by arguing that legislative history supports a subtle blending of the subdivision plat and preliminary plan terminology in § 7–117. Our cases indicate that, even when the language of a statute is free from ambiguity, "in the interest of completeness" we may, and sometimes do, explore the legislative history of the statute under review. *E.g., Harris v. State,* 331 Md. 137, 146, 626 A.2d 946, 950 (1993). We do so, however, to examine the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account. *Id.* In other words, the resort to legislative history is a confirmatory process; it is not undertaken to seek contradiction of the plain meaning of the statute. *See Coleman v. State,* 281 Md. 538, 546, 380 A.2d 49, 54 (1977) ("[A] court may not as a general rule surmise a legislative intention contrary to the plain language of a statute or insert exceptions not made by the legislature." (citations omitted)).

The only legislative history cited by Petitioner are certain bill amendments and their dates of enactment by the General Assembly. Petitioner concedes that the available history regarding § 7–117 provides no clear and definitive support for its asserted meaning of the term "subdivision plat" in the last sentence of the statute.[19] Instead, Petitioner suggests that the 1969 pre-enactment deletion of a proposed subdivision plat appeal provision that was to be § 7–117's last sentence, and the inclusion in 1975 of the same provision, somehow means that the term "subdivision plat," in the last sentence, refers to both "subdivision plat" and "preliminary subdivision plan." 1969 Md. Laws sec. 1(72), ch. 711.

The provisions in § 7–117 relating to preliminary plans of subdivision were enacted eight years before the 1975 inclusion

---

**19.** The language relating to preliminary plans of subdivision was added to the Regional District Act by Chapter 582 of the 1967 Laws of Maryland. The appeal clause in the last sentence in § 7–117 was added by Chapter 892 of the 1975 Laws of Maryland.

of the last sentence containing the subdivision plat appeal provision. 1967 Md. Laws sec. 2(72), ch. 582. It is settled law in Maryland statutory construction that

> [t]he General Assembly is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law.

*Police Commissioner of Baltimore City v. Dowling*, 281 Md. 412, 419, 379 A.2d 1007, 1011 (1977) (citations omitted). The relevant statute in 1975 contained a clear distinction between preliminary plans and final plats of which the General Assembly is presumed to have possessed full knowledge. The Legislature chose to reintroduce a final sentence allowing appeals for "subdivision plats" only. If the General Assembly had wanted to make Planning Board action on preliminary plans similarly appealable, it would have inserted the disjunctive "or," as it had in the processing time waiver provision (*supra* pp. 417–18), after "subdivision plat," and added "preliminary plan."

The amendment of § 7–117 in 1967 to include provisions pertaining to when a preliminary plan may be approved or disapproved sheds light on legislative intent. 1967 Md. Laws ch. 582. Prior to this amendment, § 7–117 only addressed the 30 day period in which a decision to approve or disapprove a subdivision plat must be made. *Id.* The 1967 amendment highlighted the distinction that any decision regarding a preliminary plan of subdivision is in addition to, different than, and a precursor to any decision involving the final plat of subdivision. The same amendment struck references in the RDA to preliminary "plat" and substituted "plan." *Id.* This evidences that the phrase "preliminary plan," as used in the RDA, was intended to sweep up subdivision procedures and actions prior to approval of the final subdivision plat. Likewise, the RDA uses the phrase "subdivision plat" to refer to the final plat.[20] The amendments point to a legislative intent

---

20. The County Council did not utilize the RDA nomenclature in adopting its subdivision regulations. Instead, Subtitle 24 of the PGCC

of treating preliminary plans and final subdivision plats on different tracks.

Our reading of § 7–117 also harmonizes its administrative appeal provision with the appeal provision in § 7–116(g).[21] Following the rule set out in *Dowling,* we presume that the General Assembly was aware of the administrative appeal provision in § 7–117 when it enacted § 7–116(g) four years later during its 1979 legislative session. Section 7–116(g) read in relevant part:

> A final action by the Commission on any application for the subdivision of land within 30 days after the action is taken by the Commission, may be appealed by any person aggrieved or [certain other parties] . . . to the circuit court for the county which may affirm or reverse the action appealed from, or remand it to the Commission for further consideration. . . .

This section recognizes that a "final action" is the end of the administrative process, and allows aggrieved parties to seek judicial review. The broad terminology of "any application for the subdivision of land" makes it clear that a preliminary plan and subdivision plat are included for the purpose of obtaining judicial review.

---

distinguishes between the two administrative actions by using "preliminary subdivision plat" and "final plat." Regarding the County Council's choice of phraseology, we shall comment later.

**21.** Art. 28, § 7–116(g) of the RDA reads as follows:

(g) *Appeals.*—A final action by the Commission on any application for the subdivision of land within 30 days after the action is taken by the Commission, may be appealed by any person aggrieved by the action, or by any person, municipality, corporation or association, whether or not incorporated, which has appeared at the hearing in person, by attorney or in writing to the circuit court for the county which may affirm or reverse the action appealed from, or remand it to the Commission for further consideration. When an appeal is filed the procedures described in § 8–105(b) of this article shall be applicable to the Commission and other parties as is appropriate.

Although described as an "appeal," such actions are prosecuted as petitions for judicial review pursuant to Md. Rules 7–201 through 7–209.

Petitioner contends that the appeal provision in § 7–116(g) must be read "[s]ubject to the intermediate appeal to the District Council provided for in § 7–117." [22] The General Assembly had no apparent intention of fastening this procedural knot around Planning Board action on preliminary subdivision plans when it enacted the appeal provision in § 7–116(g); rather, it already knew that § 7–117 concerned final subdivision plats only. The *Dowling* presumption, that the legislature has knowledge of prior law, makes it clear that the General Assembly intended no authorization for administrative appeals of Planning Board actions on preliminary plans; instead, it enacted § 7–116(g) to ensure aggrieved persons and parties were granted a forum, albeit a judicial one, to contest final actions by the Planning Board on preliminary plans. As far as Planning Board actions on final plats were concerned, the legislature envisioned the potential for an intermediate administrative appeal, before judicial review could be sought.

### D. Prince George's County Subdivision Regulations

Petitioner's main argument, concerning the County Council's subdivision regulations, relies on the fact that the word "plan" is not used. Essentially, Petitioner argues its own subdivision regulations blend the distinction between preliminary and final plats into the term "plat," and therefore the regulations do not support a clear distinction between action on a preliminary subdivision plan and action on a subdivision plat, as contemplated by the RDA. All Petitioner proves, however, is that the County Council chose to use the word "plat," in some sections, to cover both preliminary plans and final plats.

As the MNCPCC notes, in its *amicus curiae* brief in this case, Petitioner's attempt to merge preliminary subdivision plan and subdivision plat into one, blended administrative action is not supported by the subdivision regulations. A preliminary plan of subdivision alternatively is referred to in the County subdivision regulations as a "preliminary plat," a

---

22. Petitioner's Suppl. Br. at 15.

"preliminary plat of subdivision," or merely a "subdivision." A subdivision plat is referred to as a "final plat." The subdivision regulations use these distinctions for administrative action purposes in the same way the RDA does. For example, PGCC § 24 107(b), states that "[n]o land shall be subdivided within the Regional District in Prince George's County until: (1) The subdivider or his agent shall obtain approval of the *preliminary and final plats* by the Planning Board . . . ." PGCC § 24–107(b) (emphasis added).[23]

The practical distinction between a preliminary plan and a final plat is highlighted in PGCC § 24–101, *et seq.* The subdivision regulations provide that, in the overall subdivision process, required information, preliminary drawings, supporting documentation, and necessary changes and approvals occur during the preliminary plan process. *See* PGCC §§ 24–116 to 24–120. Only after a preliminary plat is approved may the subdivider proceed to prepare the final plat. PGCC § 24–119(e). The final plat is an archival quality drawing, prepared in black ink on transparent mylar (or the equivalent), incorporating the features of the approved preliminary plan and any conditions imposed by the Planning Board. *See* PGCC § 24–120(b). In other words, the subdivision regulations adopted by the County Council embody the same essential distinction as the RDA between a preliminary subdivision plan and a final subdivision plat.

### E. *PGCC §§ 24–124(a)(6)(D) and 24–137(j)*

■■■ The RDA, being a public general law, circumscribes what implementing local legislation the County Council may enact. *See Prince George's County v. Maryland–National Capital Park and Planning Commission,* 269 Md. 202, 224–226, 306 A.2d 223, 235–236 (1973). The RDA presently does not provide the authority for the District Council to entertain immediate administrative appeals of Planning Board actions

---

**23.** *See also,* PGCC § 24–119(e) ("[u]pon approval of a *preliminary plat of a subdivision,* the subdivider may proceed to prepare the *final plat(s).* Such *final plat(s)* shall be prepared in accordance with the approved *preliminary plat. . . .*" (emphasis added)).

on preliminary plans. The County Council is not empowered to augment the administrative appeal process beyond that provided for in § 7–117. Therefore, the provisions of PGCC § 24–124(a)(6)(D) (traffic mitigation techniques), and necessarily also PGCC § 24–137(j) (cluster subdivisions), which purport to authorize interlocutory administrative appeals to the District Council from Planning Board action on such aspects of preliminary plans of subdivision, are void and of no effect.

The County Council, in Bill No. CB–62–1993, amended the subdivision regulations in 1993 to incorporate PGCC § 24–124(a)(6)(D) (traffic mitigation techniques), into the subdivision regulations concerning adequacy of public transportation facilities.[24] Bill No. CB–62–1993 provided, *inter alia,* that "Planning Board action on a mitigation action may be appealed to the District Council...." A mitigation action is a function relating to adequacy of public facilities. PGCC § 24–124. Adequacy of public facilities is a relative condition of every preliminary plan application which must by shown to the Planning Board's satisfaction before approval may be given. PGCC § 24–124. There is no authority in the RDA providing for an appeal to the District Council of a TFMP.[25] Rather, the RDA provides for an appeal of final action on a prelimi-

---

**24.** The purpose of a TFMP is to protect the public health, safety, and general welfare. This is achieved by ensuring adequate access roads are available for new subdivisions, by not allowing the increased traffic to overload the existing transportation infrastructure.

**25.** As Respondent noted in its supplementary brief, the legislative history of Bill No. CB–62–1993 suggests that the County Council realized there was a problem with the legal authority for this appeal provision in the bill. The Prince George's County Council's, Housing, Planning, and Transportation Committee report on CB–62–1993 reads:

> The Committee also agreed to an amendment that will allow the appeal of mitigation decisions to the District Council. There was confusion regarding the legality of this proposal, since mitigation decisions are made at the time of preliminary plat approval, which is not appealable to the Council. It was agreed that for the purposes of introduction of the legislation, the appeals provision would be included.

Prince George's County Council, Housing, Planning & Transportation Com. Rep. No. CB–62–1993, at 2. (1993).

nary plan, whether or not including a TFMP, to the Circuit Court. Art. 28, § 7–116(g).

Prince George's County Code § 24–137(j), pertaining to cluster subdivisions, although not at issue in the present case, necessarily is also subject to the same infirmity because the District Council has no jurisdiction to consider any immediate preliminary plan administrative appeals.[26] Appeals from Planning Board actions on cluster preliminary plans of subdivision to the District Council were first enacted locally in 1972 by Bill No. CB–100–1972. This bill included the provision that, "Planning Board action on a cluster development may be appealed to the District Council ... within (30) days following notice of action on the cluster proposal...." Prince George's County Council, Bill No. CB–100–1972, at 13. While the provisions of CB–100–1972 did not refer expressly to preliminary plan action, such is assumed because the considerations necessary to approve a cluster subdivision development includes traversing successfully the preliminary plan process. The County Council clarified that this appeal process relates to preliminary plats (plans) in 1986. Prince George's County Council, Bill No. CB–55–1986, at 10 ("[P]lanning Board action on a preliminary subdivision plat for cluster development may be appealed to the District Council."). In Bill No. CB–77–1996, the County Council amended PGCC §§ 24–137(j) purporting to give the District Council "original jurisdiction" on appeal. Prince George's County Council, Bill No. CB–77–1996, at 2.

---

**26.** The stated purpose of PGCC § 24–137 (cluster development) is to permit a procedure for development which will result in improved living environments, promote more economic subdivision layout, and other purposes related thereto, within the densities established for the cluster net tract area. This is achieved by varying lot sizes (often below the minimum otherwise allowed in the particular Euclidean residential zone amenable to the cluster technique), increasing open spaces, and assuring protection of existing and potential developments adjoining cluster developments. Cluster developments must contain at least sixteen dwelling units. In contrast, minor subdivisions of four or fewer lots are dealt with under PGCC § 24–117 to 24–118, and major subdivisions are dealt with under PGCC § 24–119 to 24–120.

In 1972, the RDA contained no provision for any administrative appeal of Planning Board actions in subdivision cases. It was not until 1975 that § 7–117 was amended to provide authority to appeal Planning Board actions on final subdivision plats to the District Council. 1975 Md. Laws ch. 892. In 1979, § 7–116(g) added the provision that any final decision by the Planning Board on a preliminary plan may be the subject of an appeal to the Circuit Court. 1979 Md. Laws ch. 592. Section 7–116(g) allows judicial review of a "[f]inal action by the Commission on any application for the subdivision of land ... to the Circuit Court...." Art. 28, § 7–116(g). There has been, however, no statutory authorization under § 7–117 for immediate administrative appeals of preliminary plan actions.

■ Petitioner generally argues that the *status quo* should not be disturbed, and that "[t]he construction of § 7–117 by the governing body in Prince George's County since 1981 ... should be entitled to weight." Petitioner's Suppl. Reply Br. at 12. Even if the District Council's interpretation is on some basis "entitled to weight," an administrative or legislative construction by an entity charged with the administration of a relevant statute does not preclude an inquiry by this Court into the correctness of such construction. *See Smith v. Higinbotham,* 187 Md. 115, 132–33, 48 A.2d 754, 763 (1946). Indeed, we long have held that "[n]o custom, however long and generally it has been followed by officials of the State, can nullify the plain meaning and purpose of a statute." *Id.* We conclude that the unambiguous meaning of § 7–117, which is supported by the legislative history and buttressed by the General Assembly's purpose in providing an efficient procedure for administrative appeals and judicial review, renders unsupported the District Council's erroneous, though long-standing, construction of § 7–117.

We conclude that, although the County Council yet may choose to authorize administrative appeals to the District Council from the Planning Board's actions on final subdivision plats, an administrative appeal is not authorized from the Planning Board's action on preliminary plans of subdivision.

JUDGMENT OF THE COURT OF SPECIAL APPEALS DISMISSING APPEAL REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THIS CASE TO THE CIRCUIT COURT WITH DIRECTIONS TO VACATE THE DISTRICT COUNCIL'S DECISION AND ORDER THE DISTRICT COUNCIL TO DISMISS THE ADMINISTRATIVE APPEAL BEFORE IT. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY, MARYLAND.